UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

THE NEW YORK TIMES COMPANY and
ERICA GREEN,

                       Plaintiffs,

         - against -

U.S. DEPARTMENT OF EDUCATION,

                     Defendant.

_____

Case No. 19-cv-00693

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFFS'
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

David E. McCraw
Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-1009
mccraw@nytimes.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................... 1

**STATEMENT OF FACTS** ............................................................................................ 2

I.    **The Parkland Shooting and DOE's Response** ............................................... 2

II.   **The Times's FOIA Request and This Lawsuit** ............................................. 3

**ARGUMENT** .................................................................................................................. 5

I.    **Standard of Review** ....................................................................................... 5

II.   **DOE Has Not Met Its Burden under Exemption 5 and the 2016 FOIA Amendment** ........................... 6

    a.   The Scope of Exemption 5 ................................................................. 6

    b.   The Effect of the 2016 FOIA Improvement Act on Exemption 5 Withholding ..................... 8

    c.   DOE Has Improperly Withheld Non-Deliberative Material ......................... 10

    d.   DOE Has Not Identified Any Harm That Would Result from Disclosure ......................... 18

III.  **DOE Has Not Met Its Burden under Exemption 7** ................................. 19

IV.  **At a Minimum, *In Camera* Review Is Warranted** ................................. 22

**CONCLUSION** ............................................................................................................. 22

## Cases

*ACLU of Mass., Inc. v. U.S. Immigration & Customs Enf't*,
   2020 U.S. Dist. LEXIS 50703 (D. Mass. Mar. 24, 2020) ........................................ 14

*ACLU v. Dep't of Def.*,
   543 F.3d 59 (2d Cir. 2008) .................................................................................. 6

*Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*,
   325 F. Supp. 3d 162 (D.D.C. 2018) .................................................................... 15

*Assadi v. U.S. Citizenship & Immigration Servs.*,
   2015 U.S. Dist. LEXIS 42544 (S.D.N.Y. Mar. 31, 2015) ...................................... 6

*Assoc. Press v. Dep't of Defense*,
   554 F.3d 274 (2d Cir. 2009) ................................................................................ 5

*Bryant v. Maffuci*,
   923 F.2d 979 (2d Cir. 1991) ................................................................................ 5

*Campbell v. HHS*,
   682 F.2d 256 (D.C. Cir. 1982) ........................................................................... 20

*Carney v. Dep't of Justice*,
   19 F.3d 807 (2d Cir. 1994) .................................................................................. 5

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
   677 F. Supp. 2d 101 (D.D.C. 2009) .................................................................... 20

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................. 6, 11, 12

*Ctr. for Biological Diversity v. U.S. EPA*,
   279 F. Supp. 3d 121 (D.D.C. 2017) .................................................................... 17

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
   2019 U.S. Dist. LEXIS 223077 (D.D.C. Dec. 31, 2019) ................................. 10, 18

*Ctr. for Investigative Reporting v. U.S. Dep't of Interior*,
   2020 U.S. Dist. LEXIS 61201 (D.D.C. Apr. 7, 2020) ...................................... 9, 18

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ............................................................................................. 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ................................................................................................. 7

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*,
   2017 U.S. Dist. LEXIS 197451 (N.D. Cal. Nov. 30, 2017) .................................. 10

*Envt'l. Prot. Agency v. Mink*,
   410 U.S. 73 (1973) ............................................................................................... 8

*First Resort, Inc. v. Herrera*,
   2014 U.S. Dist. LEXIS 34077 (N.D. Cal. Mar. 10, 2014) ................................... 14

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
   678 F. Supp. 2d 162 (S.D.N.Y. 2009) ............................................................. 7, 13

*Grand Central P'ship, Inc. v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999) ......................................................................... 7, 8, 13

*Halpern v. F.B.I.*,
   181 F.3d 279 (2d Cir. 1999) ............................................................................... 22

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991) ................................................................. 7

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   375 F. Supp. 3d 93 (D.D.C. 2019) ............................... 9, 10, 18, 19

*Judicial Watch, Inc. v. U.S. Dep't of State*,
   349 F. Supp. 3d 1 (D.D.C. 2018) ........................................... 14, 15

*Leopold v. U.S. Dep't of Justice*,
   411 F. Supp. 3d 1094 (C.D. Cal. 2019) .................................... 14

*Malloy v. U.S. Dep't of Justice*,
   457 F. Supp. 543 (D.D.C. 1978) .................................................. 21

*N.Y. Times Co. v. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ....................................... 5

*N.Y. Times Co. v. U.S. Dep't of Defense*,
   499 F. Supp. 2d 501 (S.D.N.Y. 2007) ..................................... 14

*Nat'l Council of La Raza v. Dep't of Justice*,
   411 F.3d 350 (2d Cir. 2005) ........................................................ 6

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*,
   811 F. Supp. 2d 713 (S.D.N.Y. 2011) ..................................... 14

*Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*,
   868 F. Supp. 2d 284 (S.D.N.Y. 2012) .................................. 8, 11

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................... 6, 11

*NRDC v. EPA*,
   2019 U.S. Dist. LEXIS 124353 (S.D.N.Y. July 25, 2019) .......... 9

*NRDC v. EPA*,
   954 F.3d 150 (2d Cir. 2020) .................................................. 9, 17

*Petroleum Info. Corp. v. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ............................................... 13

*Protect Democracy Project, Inc. v. U.S. Dep't of Defense*,
   320 F. Supp. 3d 162 (D.D.C. 2018) ......................................... 15

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ..................................................................... 7

*Rosenberg v. U.S. Dep't of Def.*,
   342 F. Supp. 3d 62 (D.D.C. 2018) .................................... 8, 9, 17

*Seife v. U.S. Dep't of State*,
   298 F. Supp. 3d 592 (S.D.N.Y. 2018) ..................................... 15

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) .................................................. 11

*The Shinnecock Indian Nation v. Kempthorne*,
   652 F. Supp. 2d 345 (E.D.N.Y. 2009) ..................................... 22

*Tigue v. U.S. Dep't of Justice*,
   312 F.3d 70 (2d Cir. 2002) ........................................................ 7

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ..................................................................... 5

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................... 19

*Wilkinson v. FBI,*
   633 F. Supp. 336 (C.D. Cal. 1986) .......................................................................... 21
*Wilner v. NSA,*
   592 F.3d 60 (2d Cir. 2009)......................................................................................... 6
*Wood v. FBI,*
   432 F.3d 78 (2d Cir. 2005)......................................................................................... 6

**Statutes**
5 U.S.C. § 552.............................................................................................. passim

**Rules**
Fed. R. Civ. P. 56(a) ...................................................................................... 5

**Legislative History**
114 Cong. Rec. S1494 (Mar. 15, 2016) (Statement of Sen. Grassley) ........................... 8
FOIA Oversight and Implementation Act of 2015, H.R. Rep. No. 114-391 ................... 8

**Other Authorities**
Erica L. Green, *Trump's School Safety Commission Won't Look at Guns, Betsy DeVos Says*,
   N.Y. Times (June 5, 2018)........................................................................................... 3
Everytown for Gun Safety, *Gunfire on School Grounds in the United States* .............................. 1
*Final Report of the Federal Commission on School Safety* (Dec. 18, 2018)......................... 16, 18
Katie Rogers & Erica L. Green, *Trump Administration Report on School Safety Plays Down Role*
   *of Guns*, N.Y. Times (Dec. 18, 2018) ......................................................................... 3
Maggie Haberman, *Trump to Push Ahead on Gun Training for School Employees, White House*
   *Says*, N.Y. Times (Mar. 11, 2018) ............................................................................... 2
Margaret Kramer & Jennifer Harlan, *Parkland Shooting: Where Gun Control and School Safety*
   *Stand Today*, N.Y. Times (Feb. 13, 2019) ................................................................... 2
White House, *Now Is The Time* (Jan. 16, 2013) .......................................................... 12

Plaintiffs The New York Times Company and Erica Green (together, "The Times") respectfully submit this memorandum of law in opposition to the motion for summary judgment by Defendant United States Department of Education ("DOE") and in support of their cross-motion for summary judgment on their Complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

In 2018—the year a gunman killed 17 people at Marjory Stoneman Douglas High School in Parkland, Florida ("Parkland shooting")—there were at least 105 incidents of gunfire on school grounds. *See* Everytown for Gun Safety, *Gunfire on School Grounds in the United States*, https://everytownresearch.org/gunfire-in-school. The following year, there were at least 130 such incidents. *Id.*

The hallmark of the federal government's response to the tragic uptick in school violence in recent years was the establishment of a federal commission on school safety, led by Secretary of Education Betsy DeVos. In an effort to understand and inform the public about that response, The Times sought e-mail communications between certain DOE officials relating to the Parkland shooting and the new federal commission. DOE has withheld the overwhelming majority of the records at issue in this case: Of the 1,058 pages of documents in DOE's December 2019 production, which is the subject of this summary judgment briefing, the large majority have been withheld in full, with hundreds more pages subject to heavy redactions. This withholding and redaction marks an impermissibly overbroad view of the deliberative process privilege—a privilege intended to shield predecisional advice about the formulation of agency policy but weaponized increasingly by agencies like DOE to hide factual, non-deliberative information. Neither the deliberative process privilege nor any other FOIA exemption justifies the wholesale

withholding of the responsive records at issue here, which describe existing state and federal legislation, summarize public safety incidents, and otherwise shed light on the factual record upon which the federal government's response was based.

**STATEMENT OF FACTS**

**I.      The Parkland Shooting and DOE's Response**

On February 14, 2018, a former student marched into Marjory Stoneman Douglas High School in Parkland, Florida with a semi-automatic weapon, murdering 17 students and teachers and injuring 17 others. The horrific incident marks the deadliest high school shooting in United States history. In the days and months after the shooting, Stoneman Douglas students spoke out against the nation's failure to respond adequately to previous mass shootings and called for stricter gun safety measures. *See, e.g.*, Margaret Kramer & Jennifer Harlan, *Parkland Shooting: Where Gun Control and School Safety Stand Today*, N.Y. Times (Feb. 13, 2019), https://www.nytimes.com/2019/02/13/us/parkland-shooting.html.

While the activism of the Stoneman Douglas students helped spur significant reform on the state level—state legislatures passed over 75 gun safety laws in the year following the shooting—the story was very different on the federal level. *Id.* In March 2018, President Trump announced the creation of the Federal Commission on School Safety ("FCSS" or "Commission"), to be led by Secretary DeVos. *See* Maggie Haberman, *Trump to Push Ahead on Gun Training for School Employees, White House Says*, N.Y. Times (Mar. 11, 2018), https://www.nytimes.com/2018/03/11/us/politics/trump-guns-school-training.html. But on June 5, 2018—the day before the Commission's first public forum—DeVos told an incredulous Senate committee that the Commission would not look at the role guns play in school violence. *See* Erica L. Green, *Trump's School Safety Commission Won't Look at Guns, Betsy DeVos Says*,

N.Y. Times (June 5, 2018), https://www.nytimes.com/2018/06/05/us/politics/devos-guns-school-safety-commission.html. In a move lauded by the National Rifle Association, the final report issued by the Commission in December 2018 played down the role of guns in school shootings, instead recommending that schools arm staff members and train them in the use of guns. *See* Katie Rogers & Erica L. Green, *Trump Administration Report on School Safety Plays Down Role of Guns*, N.Y. Times (Dec. 18, 2018), https://www.nytimes.com/2018/12/18/us/politics/trump-administration-school-safety-report.html; *Final Report of the Federal Commission on School Safety* (Dec. 18, 2018), https://www2.ed.gov/documents/school-safety/school-safety-report.pdf [hereinafter *Final Report*].

## II.     The Times's FOIA Request and This Lawsuit

On May 14, 2018, The Times submitted a FOIA request to DOE (Request No. 18-01896-F), seeking "all emails sent and received by all employees, including all accounts used by Education Secretary Elisabeth 'Betsy' DeVos, at the U.S. Department of Education" between February 14, 2018, and May 14, 2018, containing any of the following terms: "Parkland," "school shooting," "Broward County," "Marjory Stoneman Douglas High School," "Robert Runcie," "Nikolas Cruz," "PROMISE," "Senator Rubio," "White House," "Federal Commission on School Safety," or "discipline summit." (Compl. ¶ 8.) After DOE informed The Times that it was unable to respond within 20 working days of receipt of the Request and asked The Times to narrow the request, The Times agreed, on June 12, 2018, to amend the request. As amended, the operative request (the "Request") seeks "all emails sent and received" by Secretary Devos or DOE officials Kent Talbert, Jason Botel, David Esquith, Nathan Bailey, Josh Venable, Peter Oppenheim, Candice Jackson, and Ebony Lee, between February 14, 2018, and May 14, 2018, containing any of the following terms: "Parkland," "school shooting," "school safety," "Broward

County," "Marjory Stoneman Douglas High School," "Robert Runcie," "Nikolas Cruz," "PROMISE," "guns," "Federal Commission on School Safety," or "discipline summit." (Compl. ¶ 11.) DOE did not produce any responsive documents over the next several months. (Compl. ¶ 13.)

On January 24, 2019, The Times filed this suit to obtain the requested records. (Dkt. No. 1.) After DOE answered, the parties entered on April 24, 2019 into a joint stipulation, which the Court so-ordered on April 25, 2019. (Dkt. Nos. 14–15.) In accordance with that stipulation, DOE made a series of rolling monthly productions to The Times. In light of the significant withholdings and redactions to the documents in DOE's December 2, 2019 production ("December 2019 production"), which The Times identified as of particular interest, The Times agreed, as indicated in the parties' February 14, 2020 joint letter to the Court (*see* Dkt. No. 22), to forego the production of additional records and proceed to summary judgment briefing on the legality of DOE's redactions and withholdings in the December 2019 production.

On May 8, 2020, DOE provided some records that "upon review" it determined were in fact required to be disclosed. (*See* Declaration of Alexandra Perloff-Giles ¶ 2.) Also on May 8, 2020, DOE moved for summary judgment on the remaining records at issue in the December 2019 production and submitted a *Vaughn* index identifying each of the records redacted or withheld. (*See* Dkt. Nos. 27, 28-1.)

With the benefit of the *Vaughn* index, The Times hereby agrees to further limit the scope of the records at issue to the approximately two dozen records identified in Appendix A to this memorandum. Those records include "list[s] of reported public safety incidents at schools"; "analysis of past agency guidance"; a memorandum "identifying, compiling, and describing specific federal legislation"; research and analysis of "gun control measures in various states"; a

"chart analyzing state legislation in the gun control context"; research and analysis on how states conduct "school safety drills and exercises" and "whether states permit firearms at their schools"; a "listing [of] particular statements from public officials"; and a selection of what the staff believed were "the most relevant facts" to brief Secretary DeVos before press appearances; and "analysis of a media article." (*See* Dkt. No. 28-1.)

## **ARGUMENT**

### I. **Standard of Review**

FOIA requires that government records be made available to the public unless a statutory exemption applies. 5 U.S.C. § 552(a)(3)(A), (b)(1)–(9). "The basic purpose of FOIA reflected a general philosophy of full agency disclosure," and government agency records may only be withheld if they fall within one of the nine statutory exemptions. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (internal marks and alterations omitted)). In light of this purpose, "FOIA exemptions are to be construed narrowly." *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). There is a "strong presumption in favor of disclosure [that] places the burden on the agency to justify the withholding of any requested documents." *Id.* (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal marks omitted)).

FOIA litigation is typically resolved on summary judgment. *See, e.g.*, *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). In a FOIA case, as in other litigation, summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Bryant v.*

*Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).[1] Under FOIA, the agency bears the burden of

demonstrating that a particular exemption applies. *See Am. Civil Liberties Union v. Dep't of Def.*,

543 F.3d 59, 66 (2d Cir. 2008). Failure to meet that burden requires disclosure of the requested

documents, and any doubts are resolved in favor of disclosure. *See Nat'l Council of La Raza v.

Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005).

A Court reviews *de novo* an agency's decision to withhold information from the public. 5

U.S.C. § 552(a)(4)(B). As a result, the agency's decision as to the applicability of a given

exemption is entitled to no judicial deference. *See Bloomberg*, 601 F.3d at 147. Although courts

review reasonably detailed agency affidavits with a presumption of good faith, this primarily is

for determining the need for further fact-finding. *See, e.g.*, *Wood v. F.B.I.*, 432 F.3d 78, 85 (2d

Cir. 2005); *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009). "Conclusory

assertions of privilege will not suffice to carry the government's burden of proof in defending

FOIA cases." *Assadi v. U.S. Citizenship & Immigration Servs.*, 2015 U.S. Dist. LEXIS 42544, at

*13 (S.D.N.Y. Mar. 31, 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

854, 861 (D.C. Cir. 1980) (internal marks omitted)).

## II.     DOE Has Not Met Its Burden under Exemption 5 and the 2016 FOIA Amendment

### a.   The Scope of Exemption 5

FOIA's Exemption 5 permits an agency to withhold "inter-agency or intra-agency

memorandums or letters that would not be available by law to a party other than an agency in

---

[1] Neither The Times nor DOE has submitted a Local Rule 56.1 statement in accordance with the practice in FOIA cases in this District. *See N.Y. Times Co. v. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("[T]he general rule in this Circuit is that in FOIA actions . . . Local Civil Rule 56.1 statements are not required." (internal marks omitted)).

6

litigation with the agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege—one of the privileges that apply through Exemption 5, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975)—protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Sears*, 421 U.S. at 150). To benefit from the privilege, the agency must establish that the document at issue is both pre-decisional and deliberative. *See Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999).

A document is considered pre-decisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (internal marks omitted)). The agency "must be able to demonstrate that . . . the document for which [the] privilege is claimed related to a specific decision facing the agency." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002) (citing *Sears*, 421 U.S. at 151 n.18); *see, e.g.*, *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162, 167–68 (S.D.N.Y. 2009) (requiring the agency "to identify the particular decisions to which the documents correspond," or "if a decision was not made based upon the document, . . . the specific issue facing the agency that the document addressed and note that a decision was not made").

A document is deliberative if it is "actually related to the process by which policies are formulated." *Grand Central P'ship*, 166 F.3d at 482 (quoting *Hopkins*, 929 F.2d at 84 (internal marks and alteration omitted)). This analysis looks to factors such as whether a given document "formed an essential link in a specific consultative process, whether it reflects the personal

opinion of the writer rather than the policy of the agency, and whether, if released, it would inaccurately reflect or prematurely disclose the views of the agency." *Fox News Network*, 678 F. Supp. 2d at 168 (citing *Grand Central P'ship*, 166 F.3d at 482). A key consideration is whether the document contains "considerations of a policy's merits," in which case it may be deliberative, or "mere . . . articulations of existing policy, which might also pertain to an agency's decision," but which are not protected by the privilege. *Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012).

Finally, "purely factual material" contained in an otherwise deliberative document is not privileged unless it is inextricably intertwined with deliberative material. *Envt'l. Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973); *Grand Central P'ship*, 166 F.3d at 482.

### b. The Effect of the 2016 FOIA Improvement Act on Exemption 5 Withholding

The deliberative process privilege is "the most used privilege and the source of the most concern regarding overuse." FOIA Oversight and Implementation Act of 2015, H.R. Rep. No. 114-391, at 10; *see id.* (noting that the deliberative process privilege "has become the legal vehicle by which agencies continue to withhold information about government operations"); *see also* 114 Cong. Rec. S1494, at 3 (Mar. 15, 2016) (Statement of Sen. Grassley) (pointing to a "growing and troubling trend towards relying on these discretionary exemptions to withhold large swaths of Government information, even though no harm would result from disclosure," and noting that federal agencies used Exemption 5 41% more in 2012 than in the previous year).

To combat agencies' overreliance on the deliberative process privilege, Congress enacted an amendment to FOIA in 2016 that places an additional burden on the agency to show that disclosure of the withheld material would actually cause harm to the interests protected by the exemption(s) relied upon. The relevant text of FOIA now provides: "An agency shall . . .

withhold information under this section only if [ ] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law[.]" *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (quoting 5 U.S.C. § 552(a)(8)(A)).

As this Court has recognized, the 2016 FOIA amendment and its addition of the "foreseeable harm" standard imposes "an independent and meaningful burden on agencies" beyond the requirements to satisfy the pre-existing exemptions. *NRDC v. EPA*, 2019 U.S. Dist. LEXIS 124353, at *2 (S.D.N.Y. July 25, 2019), *aff'd on other grounds*, 954 F.3d 150 (2d Cir. 2020). To meet this "independent and meaningful burden," the agency must do more than "perfunctorily state that disclosure of all of the withheld information—regardless of category or substance—would jeopardize the free exchange of information." *Id.* at *1–2 (quoting *Rosenberg*, 342 F. Supp. 3d at 79); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (holding "boiler plate" statements about the "chilling effect" that would result from disclosure insufficient). It must "show that disclosure *would* cause reasonably foreseeable harm, not that it *could* cause such harms." *Ctr. for Investigative Reporting v. U.S. Dep't of Interior*, 2020 U.S. Dist. LEXIS 61201, at *13 (D.D.C. Apr. 7, 2020). "Absent a sufficiently specific explanation" as to how disclosure "would result in reasonably foreseeable harm" to any interest protected by an exemption, the agency's motion for summary judgment should be denied. *Judicial Watch*, 375 F. Supp. 3d at 101.

With respect to withholdings under Exemption 5, DOE must disclose records otherwise protected by the exemption unless it can provide a specific, meaningful explanation of how disclosure "would harm the agency's deliberative process." *Rosenberg*, 342 F. Supp. 3d at 78–

79; *see id.* (holding DOD's perfunctory assertion that releasing the withheld material "would

jeopardize the free exchange of information between senior leaders within and outside of the

[DOD]" insufficient to satisfy the foreseeable harm standard); *Ctr. for Investigative Reporting*,

2020 U.S. Dist. LEXIS 61201, at *13 (holding that the agency had failed to "establish[] a

reasonably foreseeable link between the[] harms [asserted] and the specific information

contained in the withheld records"); *Ctr. for Investigative Reporting v. U.S. Customs & Border

Prot.,* 2019 U.S. Dist. LEXIS 223077, at *42–43 (D.D.C. Dec. 31, 2019) (finding that the

government had "failed to satisfy the 'heightened' foreseeable harm requirement"); *Judicial

Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100–01 (D.D.C. 2019) (rejecting an

agency's "general," "boiler plate," and "speculati[ve]" claims of foreseeable harm to deliberative

process and explaining that "[t]he question is not whether disclosure could chill speech, but

rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between

this harm and the specific information contained in the material withheld"); *Ecological Rights

Found. v. Fed. Emergency Mgmt. Agency*, 2017 U.S. Dist. LEXIS 197451, at *16 (N.D. Cal.

Nov. 30, 2017) (holding that the agency "fail[ed] to explain how disclosure would expose [its]

decision-making process so as to discourage candid discussion" or to "provide any justification

for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of

2016").

### c. DOE Has Improperly Withheld Non-Deliberative Material

Contrary to the Government's contention that all 85 records identified in the *Vaughn*

index are protected by Exemption 5's deliberative process privilege,[2] many of the records at

---

[2] Puzzlingly, the Government's brief contends that only "certain records are protected by the
deliberative process privilege" (Def.'s Mem. of Law in Supp. of its Mot. for Summ. J., Dkt. No.

issue do not pertain to any kind of future policy decision and therefore are neither predecisional nor deliberative. In addition, several records clearly constitute factual material that is required to be disclosed.

### i. Statements about Existing Policy

Statements about existing agency policy are *not* deliberative—even if the statement regarding existing policy "might also pertain to an agency's decision" about some future policy. *Nat'l Immigration Project of Nat'l Lawyers Guild*, 868 F. Supp. 2d at 292. As the Supreme Court has explained, "Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy." *Sears*, 421 U.S. at 153. Such "opinions and interpretations" of agency policy need not take the form of formal guidance; even "instructions to staff that affect a member of the public" must be disclosed. *Id.* Similarly, documents discussing "the applicability of existing policy to a certain state of facts" or to a "hypothetical fact pattern" must be disclosed. *Coastal States*, 617 F.2d at 858; *see also Tax Analysts v. IRS*, 117 F.3d 607, 608–17 (D.C. Cir. 1997) (holding that an IRS memorandum for field personnel was not protected by the deliberative process privilege because "the national office, in issuing these memoranda, is attempting to develop a body of coherent, consistent interpretations of the federal tax laws nationwide"). In short, records pertaining to "the application"—as opposed to "the formulation"—of policies are not covered by Exemption 5. *Nat'l Immigration Project*, 868 F. Supp. 2d at 293.

Numerous documents withheld by DOE contain analysis of existing government policy. Most explicitly, a memorandum from Candice Jackson to Ebony Lee (Bates Numbers 002876-

27 [hereinafter "Gov't Br."], at 1)), even as the *Vaughn* index (Dkt. No. 28-1) cites Exemption 5 as the basis for withholding in part or in full every single one of the documents at issue from the December 2019 production.

002881), which "relat[es] to DOE's discipline guidance" and "provides an analysis of past agency guidance," was withheld.[3] Analysis of past or existing DOE agency guidance that reflects the DOE's interpretation of that guidance is "more akin to [an] opinion about the applicability of existing policy to a certain state of facts" and must be disclosed. *Coastal States*, 617 F.2d at 868. Similarly, a memorandum about "particular" "DOE programs, activities and initiatives that may be relevant to school safety" (Bates Number 002981) pertains to existing programs and policies and cannot be withheld.

So too with summaries and descriptions of existing non-DOE policy or legislation. Such documents withheld by DOE include: a memorandum "describing" and "analyzing legislation introduced in the House of Representatives and Senate from January 2017 to March 21, 2018" (Bates Numbers 002986-002912); a memorandum "summarizing President Obama's 'Now is the Time' initiative," laid out in 2013, *see* White House, *Now Is The Time* (Jan. 16, 2013), https://obamawhitehouse.archives.gov/sites/default/files/docs/wh_now_is_the_time _full.pdf (Bates Numbers 003232-003233); "research on gun control issues in various states" (Bates Numbers 003226-003227); a "[c]hart analyzing gun control measures in various states" (Bates Numbers 003234-003409); a chart reflecting the status of state and federal legislative and regulatory efforts relating to school safety (Bates Numbers 003414-003497); a summary of "state legislative mandates for conducting safety drills and exercises in schools" (Bates Numbers 003410-003411); and "research on state legislative prohibitions and allowances of firearms at schools" (Bates Numbers 003412-003413). None of this factual background research on existing

---

[3] There appears to be an error in the *Vaughn* index, which indicates that the memorandum was dated March 6, 2018, but that the e-mail to which the memorandum was attached was sent on February 21, 2018. (*See* Dkt. No. 28-1.) It goes without saying that the Memorandum must be dated on or before the date it was sent.

state and federal laws is predecisional or deliberative; none of it "reflects the personal opinion of the writer." *Fox News Network*, 678 F. Supp. 2d at 168. It may not be withheld.

### ii. Press Statements and Briefings

Neither press statements made by other government officials not briefings prepared for press appearances by Secretary DeVos are exempt from disclosure. First, DOE has withheld compilations of statements made by the heads of other Executive Agencies to the media. (*See* Bates Numbers 002913-002915.) Public statements made by officials outside DOE to the press do not reveal anything private about internal deliberations over any DOE policy. *Cf. Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1436 (D.C. Cir. 1992) (rejecting the withholding under the deliberative process privilege of information drawn "exclusively from documents now publicly available"). They do not reflect the "personal opinion" of a DOE policymaker or represent a link in the consultative process, and they may not say anything at all about DOE, let alone "prematurely disclose the views of the agency." *Fox News Network*, 678 F. Supp. 2d at 168; *Fox News Network*, 678 F. Supp. 2d at 168 (citing *Grand Central P'ship*, 166 F.3d at 482).

Second, DOE has withheld briefings provided to Secretary DeVos, including daily briefings, which contained "what [staff] felt were the most relevant facts to brief a high-ranking official" (Bates Numbers 002937-003038, 003094-003111, 003127-003186, 003192-00320), and briefings for press appearances, such as interviews with *Today* or *Fox & Friends* (Bates Numbers 003204-003206, 003207-003208). Talking points for public appearances or press interviews are required to be disclosed:

> Such 'messaging' is no more than an explanation of existing policy, which is not protected by the deliberative process privilege. Deliberations about how to present an already decided policy to the public, or documents designed to explain that policy to—or obscure it from—the public, including in draft form, are at the heart of what should be released under FOIA.

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011); *see also N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F. Supp. 2d 501, 514 (S.D.N.Y. 2007) ("With respect to the talking points and the formulations of responses to possible questions," which were "prepared to aid in briefing officials and preparing them to answer questions," the agency failed to "adequately describe how these documents are contemplative, deliberative, analytical documents, weighing the pros and cons of a given course of action."); *Judicial Watch, Inc. v. U.S. Dep't of State*, 349 F. Supp. 3d 1, 8 (D.D.C. 2018) (rejecting the application of Exemption 5 to talking points and noting that "stretching the deliberative process privilege [to include all talking points] would put many important public statements outside FOIA's grasp"); *ACLU of Mass., Inc. v. U.S. Immigration & Customs Enf't*, 2020 U.S. Dist. LEXIS 50703, at *20–21 (D. Mass. Mar. 24, 2020) (holding that the deliberative process privilege did not cover draft talking points where the agency had "not demonstrated that the draft talking points formed an essential link in a specified consultative process," had not shown that "the draft talking points contain the personal opinions of the [person] who was responsible for their drafting," and had not established that release of the draft talking points "would inaccurately reflect or prematurely disclose the views of the agency"); *Leopold v. U.S. Dep't of Justice*, 411 F. Supp. 3d 1094, 1106 (C.D. Cal. 2019) (requiring the agency to produce "press guidance and suggested talking points"); *First Resort, Inc. v. Herrera*, 2014 U.S. Dist. LEXIS 34077, at *12 (N.D. Cal. Mar. 10, 2014) (holding that "preparations for interviews or other public communications" were not protected by the deliberative process privilege).[4]

---

[4] None of the cases cited by the Government supports its contention that talking points are somehow categorically "exempt from disclosure." (Gov't Br. 8.) To the contrary, in each of the three cases cited by the Government, the Court carefully parsed the documents at issue and determined that some had to be released. In *Seife v. U.S. Department of State*, the Court

Seeking to avoid its obligations to disclose all factual material, the Government contends that when factual information or public statements are "curated," "selected," "culled by staff," and determined to be "of the greatest import to the officials," they somehow fall under the umbrella of the deliberative process privilege. (Gov't Br. at 9; *see also* Decl. of Gregory Smith [hereinafter "Smith Decl."], Dkt. No. 28, at ¶ 17(f) ("These documents reflect Department officials culling through a broad universe of potentially relevant information and selectively choosing which information was relevant to issues being addressed by the Department and the [Federal Commission on School Safety].")) Not so. Policy decisions are *always* (one hopes) based on facts that are selected, among other facts that exist in the world, for their perceived relevance to the decision-making process. If facts could be withheld because they might

---

emphasized that "the burden remains on the [agency] to 'furnish the Court with specific information establishing that the document is both predecisional and deliberative'" and held that the agency had not met that burden where it failed to provide "specific information about the documents," including "the relationship between their author and ultimate recipient" and "their 'function and significance in the agency's decisionmaking process.'" *Seife*, 298 F. Supp. 3d 592, 617, 620 (S.D.N.Y. 2018). Accordingly, the Court held that it could not "determine that the proposed talking points . . . 'formed an essential link in a specified consultative process' or 'if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* at 620. Similarly, in *Protect Democracy Project, Inc. v. U.S. Department of Defense*, the Court did not simply accept the agency's assertions of privilege on their face, but rather reviewed all of the talking-point documents *in camera*, before ultimately ordering the agency to release certain "portions of the talking-points documents" that were "reasonably segregable." *Protect Democracy*, 320 F. Supp. 3d 162, 177–78 (D.D.C. 2018). Finally, in *American Center for Law & Justice v. U.S. Department of Justice*, the Court again looked to the specifics of the talking points documents, determining that, with respect to some of the documents, the Court had "no basis to assess" "how [the documents] were used, or what their [specific] subject matter was," and therefore the agency "ha[d] not provided the minimum facts needed for the invocation of the deliberative process privilege." *Am. Ctr. for Law & Justice*, 325 F. Supp. 3d 162, 174 (D.D.C. 2018). Moreover, *Judicial Watch v. U.S. Department of State*, cited above, interpreted the language about potential protection of talking points in *American Center for Law & Justice* narrowly, explaining that only talking points that represented the advice of a subordinate as part of the "give-and-take leading to a consensus on the agency's public position" were privileged; talking points "representing the agency's final decision about what to say," the court indicated, are not privileged. *Judicial Watch*, 349 F. Supp. 3d at 7–8.

somehow reveal something about the writer's thinking, the distinction between factual statements and statements of opinion that has long been core to Exemption 5 would be obliterated. To the contrary, the case law is clear: segregable factual material must be released. *See, e.g.*, *Coastal States*, 617 F.2d at 867 ("[T]he privilege applies only to the 'opinion' or 'recommendatory' portion of the report, not to factual information which is contained in the document."). All factual material in briefings or other documents, including explanations of existing policy and discussions of how to communicate that policy to the public, is outside the scope of Exemption 5 and must be disclosed.

### iii. Meeting Notes

DOE has also not met its burden of showing that meeting minutes summarizing recommendations and reflecting the "documents reviewed at an inter-agency meeting on school safety" are exempt from disclosure. (*See* Bates Numbers 002925-002926, 002927-002928.)

For example, DOE has withheld minutes from the "organizational" meeting on March 28, 2018 (Dkt. No. 28-1), convened by Secretary DeVos to "discuss[] the scope of work, staffing, coordination with state and local partners, the timeline for future meetings with stakeholders, and how best to incorporate stakeholder input on the areas of focus that President Trump directed the Commission to study." *Final Report*, at 6–7. As the word "organizational" and the description in the final report suggest, the subject of the meeting—and therefore of the meeting minutes—was not plausibly the formulation of agency policy.

Further, the research or documents an agency looks to in developing policy is factual information required to be disclosed. The list of "documents reviewed" at the relevant meetings (Bates Numbers 002925-002926 and 002927-002928) does not disclose "*any* subjective agency views." *NRDC v. U.S. EPA*, 954 F.3d 150, 156 (2d Cir. 2020). "[T]he kind and scope of

discretion involved" in compiling a list of relevant documents is not "of such significance that disclosure genuinely could be thought likely to diminish the candor of agency deliberations in the future." *Id.* at 157; *see id.* (holding that the fact that records could "reveal the various analytical tools [the agency] has at its disposal . . . does not make [the records] deliberative"). Nor does the list of documents reviewed "invite a response from the requesting official," *Ctr. for Biological Diversity v. U.S. EPA*, 279 F. Supp. 3d 121, 149 (D.D.C. 2017). Accordingly, that list of documents does not "fall under the deliberative process privilege at all," *id.*, and must be released.

More broadly, the agency has not identified any specific harm that would plausibly result from disclosure of any of these meeting minutes. *See infra*. Unlike the disclosure of communications from established and ongoing advisory channels within an agency, disclosure of notes from meetings that took place between an ad hoc commission and other executive agencies, on a specific timely topic and in connection with a report that has been publicly released, does not reasonably foreseeably harm "future honest and frank communication within the agency." *Rosenberg*, 342 F. Supp. 3d at 79; *see id.* (suggesting that disclosure is appropriate for "seemingly more benign categories of withheld deliberative information"). The final report has already disclosed information about the differing policy views presented at various commission meetings; for example, with respect to the Obama-era school discipline guidance, the report noted that "[s]ome favored preserving the Guidance to reinforce the message that discrimination based on race, nationality, or ethnicity is unacceptable," while "[o]thers stressed the importance of preserving specific portions of the Guidance designed to reduce exclusionary discipline," and yet others argued that the Guidance "is legally flawed and poses severe unintended consequences for school safety." *Final Report*, at 68; *see also, e.g.*, *id.* at 63 (noting

that the commission was presented with differing views on the effect of exposure to violent entertainment). If the inclusion of differing views that informed the commission in the final report itself did not "confuse the public" as to the commission's actual final recommendations (Gov't Br. 11), the release notes from commission meetings pursuant to a FOIA request certainly would not. In short, withholding does not serve the interests that the deliberative process protection is intended to protect—namely, the public appearance of a unified agency policy and the freedom of bureaucrats to candidly exchange ideas in the future.

### d. DOE Has Not Identified Any Harm That Would Result from Disclosure

As noted above with respect to the meeting minutes, the 2016 FOIA Amendment requires disclosure of all of the documents in Appendix A. Under the amendment, DOE must identify non-speculative harms likely to result from disclosure and tie those harms to the specific information contained in the material withheld. *See, e.g.*, *Judicial Watch*, 375 F. Supp. 3d at 100–01. It has not done so. Instead, the declaration of Gregory Smith, Director of DOE's FOIA Service Center, simply repeats essentially the same speculative concern about a "chilling effect on the Department's deliberative process" with respect to each of the categories of documents at issue. (Smith Decl. ¶¶ 13–16)—precisely the kind of generalized, boiler plate concern that has been found insufficient. *Judicial Watch*, 375 F. Supp. 3d at 100–01; *accord Ctr. for Investigative Reporting*, 2020 U.S. Dist. LEXIS 61201, at *14; *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,* 2019 U.S. Dist. LEXIS 223077, at *42–43.

It is simply not plausible that revealing, for example, research on state and federal legislative and regulatory measures relating to school safety (*see, e.g.*, Bates Numbers 003414-003497, 003410-003411, 003412-003413), compiled press statements by non-DOE officials, or notes for televised appearances on *Today* or *Fox & Friends* would diminish the willingness of

DOE policymakers "to offer candid advice in the future." (Gov't Br. 10.) Agency officials will always strive to present relevant background information to their superiors; they will not stop compiling and "recommend[ing]" that "high-ranking officials" review "certain information they believe would be the most appropriate and beneficial." (Smith Decl. ¶ 14.)

Nor, again, is it credible that the release of certain records, like a summary of an Obama-era initiative (Bates Numbers 003232-003233) or research on state legislative measures related to school safety exercises or firearms in schools (Bates Numbers 003410-003411, 003412-003413), would foreseeably "confuse the public as to the actual final recommendations of the FCSS or the specific grounds relied upon to reach its final position."[5] (Gov't Br. 11–12.) The final recommendations of the FCSS are memorialized in the commission's December 2018 final report, which was transmitted to the President. *See Final Report*. Revealing what information and ideas the agency considered in arriving at those recommendations would not confuse the public, but rather would allow the public to better understand and evaluate the recommendations and thus "open agency action to the light of public scrutiny," consistent with "the basic purpose of the FOIA." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).

### III.  DOE Has Not Met Its Burden under Exemption 7

The Government's reliance on Exemption 7(A) and 7(E) is equally misplaced. Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could

---

[5] The Government argues that release of the records "would *potentially* confuse the public" (Gov't Br. 11, 14 (emphasis added)). That is not the standard. The Government must show that it is reasonably foreseeable that harm would result from disclosure, not that it is merely conceivably or possible. *See* 5 U.S.C. § 552(a)(8)(A); *Judicial Watch*, 375 F. Supp. 3d at 100–01 ("The question is not whether disclosure *could* chill speech, but rather if it is reasonably foreseeable that it *will* chill speech . . . ." (emphasis added)).

reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

Exemption 7(E) permits withholding of law enforcement records or information when release of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Two of the documents withheld by DOE under Exemptions 7(A) and 7(E) are "summar[ies] of public safety incidents at schools," whose withholding in full, DOE asserts, is justified because the documents include a "[l]ist of reported public safety incidents at schools" (Bates Numbers 003696-003699, 003712-003715). The remaining documents withheld under Exemption 7 are FBI reports on "specific and identified threats," including "quotes from threats received" (Bates Numbers 003628-003635, 003647-003653, 003656-003662, 003666-003671).

In support of its reliance on Exemption 7(A), the Government contends that disclosure of these records "could alert potential investigatory targets as to the existence or scope of an investigation." (Gov't Br. 17.) But if the public safety incidents or threats have already been "reported," they are hardly secret. At a minimum, the fact that these incidents occurred is of course known to the suspects themselves, who could infer that their actions may be investigated. Moreover, the Government cannot rely on declarations that do no more than mouth generic truisms about the value of secrecy to investigations. *See, e.g.*, *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 108 (D.D.C. 2009) (holding that the agency failed to meet its burden under Exemption 7(A) where it did "not explain how its investigation will be impaired by the release of information that the targets of the investigation already possess") (citing *Campbell v. HHS*, 682 F.2d 256, 265 (D.C. Cir. 1982)). It is simply not

plausible that releasing a list of incidents or "specific and identified threats" that have been reported to the agency, and may well have been the subject of media reporting, could reasonably alert potential investigatory targets to the existence or scope of an investigation[6] or otherwise interfere with enforcement proceedings.

The Government's argument in support of its reliance on Exemption 7(E)—that disclosure "would reveal . . . facts that the FBI and DHS focus on when identifying threats to schools" (Gov't Br. 17)—fares no better. Merely disclosing the fact that public safety incidents took place or factual details about reported threats does not reveal any confidential law enforcement techniques or procedures. Nor can the Government invoke the exemption to shield techniques that are widely known to the public. *See, e.g.*, *Wilkinson v. FBI*, 633 F. Supp. 336, 349 (C.D. Cal. 1986) ("In order to justify a deletion under Exemption 7(E), the government will have the burden of proving that these techniques are not generally known to the public."); *Malloy v. U.S. Dep't of Justice*, 457 F. Supp. 543, 545 (D.D.C. 1978) (explaining that Exemption 7(E) extends only "to investigative techniques and procedures generally unknown to the public").

Finally, the alleged risk that release of the records "may inform the public as to the specific analysis DHS or the FBI undertake when investigating public safety issues related to schools" (Smith Decl. ¶ 19) is hardly a cognizable harm under FOIA. To the contrary, "inform[ing] the public" as to how agencies carry out their responsibilities is precisely the purpose of FOIA—and the reason these records must be disclosed.

---

[6] Based on the *Vaughn* description, it does not appear that the "list of reported safety incidents" identifies or describes any investigations connected to those incidents, and therefore could not reasonably be expected to reveal information about the "existence or scope" of law enforcement investigations. To the extent the documents contain names of suspects who have not yet been investigated but may be, and the Government is concerned that they may try to evade arrest, for example, redaction of those specific names—rather than withholding in full—is appropriate.

## IV.    At a Minimum, *In Camera* Review Is Warranted

DOE's wholesale withholding of hundreds of pages of responsive material suggests that the agency has not properly segregated out factual, non-deliberative material and has instead "exempted whole documents simply because there was some exempt material in them." *Halpern v. F.B.I.*, 181 F.3d 279, 292 (2d Cir. 1999). In such circumstances, if the Court is not inclined to simply order release of the information, at a minimum it should conduct *in camera* review to assess whether the Government has properly applied the deliberative process and law enforcement exemptions and adhered to its obligation to segregate and disclose all non-exempt material. *See id.*; *see also* 5 U.S.C. § 552(a)(4)(B) (the court "may examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section"). Further, the relatively small number of documents at issue—just 25 documents, as reflected on Appendix A— minimizes the burden of *in camera* review for the Court. *See, e.g.*, *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 356 n.6 (E.D.N.Y. 2009) (conducting *in camera* review of documents partially withheld under Exemption 5 given that small number of documents made "the burden of *in camera* review relatively light").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully asks this Court: (i) to deny DOE's motion for summary judgment and to grant Plaintiffs' cross-motion for summary judgment; (ii) to declare that the documents sought by the Request are public under 5 U.S.C. § 552 and must be disclosed; (iii) to direct DOE to provide the requested records to The Times within 20 business days of the Court's order; (iv) to award Plaintiffs the costs of this proceeding, including

reasonable attorney's fees, as expressly permitted by FOIA, *id.* § 552(a)(4)(E); and (v) to grant

such other and further relief as the Court deems just and proper.

Dated: New York, NY
      June 8, 2020

                                     Respectfully submitted,

                                     By: /s/ David E. McCraw

                                   David E. McCraw
                                   Alexandra Perloff-Giles
                                   The New York Times Company
                                   Legal Department
                                   620 Eighth Avenue, 18th Floor
                                   New York, NY 10018
                                   Phone: (212) 556-4031
                                   Fax: (212) 556-4634
                                   mccraw@nytimes.com

                                   *Attorneys for Plaintiffs*

## Appendix A:
## Narrowed List of DOE Records At Issue

- 002876-002881: Memorandum from Candice Jackson (Office of Civil Rights) to Ebony Lee.
- 002925-002926: Draft Meeting Notes, Meeting with Department of Education and Department of Health and Human Services.
- 002927-002928: Draft Meeting Notes, Meeting with Department of Education and Domestic Policy Council.
- 002981: Memorandum relating to DOE's programs and activities relating to school safety.
- 002986-002912: Memorandum analyzing legislation introduced in the House of Representatives and Senate from January 2017 to March 21, 2018.
- 002913-002915: Memorandum, compilation of statements made by Secretary Kirstjen Nielsen and Attorney General Jeffrey Sessions in press briefings and media quotations.
- 002937-003038: Briefing, Daily Briefing for Secretary Devos.
- 003094-003111: Briefing, Daily Briefing for Secretary Devos.
- 003127-003186: Briefing, Daily Briefing for Secretary Devos.
- 003192-003203: Briefing, Daily Briefing for Secretary Devos.
- 003204-003206: Briefing for Secretary Betsy Devos: Interview with Fox and Friends.
- 003207-003208: Briefing for Secretary Betsy Devos: Interview with Today.
- 003226-003227: Memorandum setting forth research on gun control issues in various states.
- 003232-003233: Memorandum summarizing President Obama's "Now is the Time" initiative.
- 003234-003409: Chart analyzing gun control measures in various states.
- 003410-003411: Memorandum setting forth research on state legislative mandates for conducting safety drills and exercises in schools.
- 003412-003413: Memorandum setting forth research on state legislative prohibitions and allowances of firearms at schools.
- 003414-003497: Chart reflecting status and progress by federal agencies, Congress, and the states relating to school safety.
- 003628-003635: Report from the Federal Bureau of Investigation relating to threats to schools in the United States.
- 003647-003653: Report from the Federal Bureau of Investigation relating to threats to schools in the United States.
- 003656-003662: Report from the Federal Bureau of Investigation relating to threats to schools in the United States.
- 003666-003671: Report from the Federal Bureau of Investigation relating to threats to schools in the United States.

- 003696-003699: Memorandum from DHS reflecting a summary of public safety incidents at schools.
- 003712-003715: Memorandum from DHS reflecting a summary of public safety incidents at schools.
- 003856-003858: Email, from Hans Bader to: Robert Eitel, Candice Jackson, William Trachman, Brittany Bull, Brandon Sherman, Steven Menashi, Jed Brinton, Jason Botel, Ebony Lee,