UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE NEW YORK TIMES COMPANY,
and ERICA GREEN

          Plaintiffs,

   -v-                                 No.  19 CV 693-LTS

DEPARTMENT OF EDUCATION,

          Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiffs The New York Times Company ("NY Times") and Erica Green ("Plaintiffs"), bring this action for declaratory and injunctive relief under 5 U.S.C. section 552, the Freedom of Information Act ("FOIA"), to obtain documents relating to the consideration and development of school safety policies employed by Defendant United States Department of Education ("Defendant," or the "Department," or "DOE") between February 14, 2018, and May 14, 2018.  (Docket entry no. 1 ("Complaint"); docket entry no. 28 ("Smith Decl.") ¶¶ 8-9.)  The DOE has moved for summary judgment (docket entry no. 26), and Plaintiffs have cross-moved for summary judgment (docket entry no. 29).  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1331 and 5 U.S.C. section 552.

The Court has considered the submissions of the parties carefully and, for the following reasons, grants, in part, and denies, in part, each of the motions.

BACKGROUND

The following facts are undisputed unless otherwise noted.[1]   On May 14, 2018,

Plaintiffs submitted a FOIA request ("the Request") to the DOE, seeking:

> all emails sent and received by all employees, including all accounts
> used by Education Secretary Elisabeth 'Betsy' DeVos, at the U.S.
> Department of Education between February 14, 2018, and May 14,
> 2018, containing any of the following terms: Parkland, school
> shooting, Broward County, Marjory Stoneman Douglas High School,
> Robert Runcie, Nikolas Cruz, PROMISE, Senator Rubio, White
> House, Federal Commission on School Safety, or discipline summit.

(Smith Decl. ¶ 8.)  The DOE acknowledged receipt of the Request on May 15, 2018.  (Id.)  On

June 12, 2018, Plaintiffs narrowed the scope of the Request, seeking:

> all emails sent and received by Education Secretary Elisabeth "Betsy"
> DeVos, Kent Talbert, Jason Botel, David Eisquith, Nathan Bailey,
> Josh Venable, Peter Oppenheim, Candice Jackson, and Ebony Lee,
> between February 14, 2018, and May 14, 2018, containing any of the
> following terms: Parkland, school shooting, school safety, Broward
> County, Marjory Stoneman Douglas High School, Robert Runcie,
> Nikolas Cruz, PROMISE, guns, Federal Commission on School
> Safety, and discipline summit.

(Id.)  Plaintiffs notified the DOE that they wanted to exclude "mass mailings from news sites"

and "assembled news clips from various news sources" from the Request.  (Id. ¶ 9.)

Plaintiffs filed this lawsuit on January 24, 2019, asserting claims under FOIA. On

April 25, 2019, the Court entered the parties' stipulation, setting forth a schedule for the

production of documents within the scope of the Request.  (See docket entry no. 15; Smith Decl.

¶ 10.)  Pursuant to that schedule, the DOE made seven productions on May 10, 2019, May 30,

2019, July 1, 2019, August 14, 2019, September 19, 2019, December 2, 2019, and February 7,

---

[1]      Facts recited as undisputed are drawn from evidence as to which there is no
nonconclusory contrary factual proffer.

2020, consisting of 4,885 pages of responsive records.  (Smith Decl. ¶ 11.)  The parties

submitted a joint letter to the Court on February 14, 2020, in which Plaintiffs expressed their

desire to forgo the production of any additional records in this litigation and cross-move for

summary judgment as to the records that were redacted, in part, or withheld, in entirety, pursuant

to FOIA Exemption 5, 5 U.S.C. § 552(b)(5) (hereinafter "Exemption 5") and FOIA Exemption 7,

5 U.S.C. § 552(b)(7) (hereinafter "Exemption 7") in the DOE's December 2, 2019, production.

(See docket entry nos. 22-23; Smith Decl. ¶ 12.)

       The DOE thereafter moved for summary judgment (docket entry no. 26) in

relation to the 85 emails and attachments that were included in the December 2, 2019, production

and either redacted, in part, or withheld, in entirety, pursuant to Exemption 5 or Exemption 7.

Having the benefit of the DOE's Vaughn[2] Index (docket entry no. 28-1) submitted with the

DOE's motion for summary judgment and identifying (1) each document in which the DOE

withheld material pursuant to Exemption 5 or Exemption 7, and (2) the justification for each

withholding, Plaintiffs narrowed the scope of the dispute in their cross-motion for summary

judgment to contest the withheld material contained in approximately 25 of the 85 documents.

(Docket entry nos. 29-30.)  Hence, the dispute before the Court on this motion practice is

whether the records listed in Appendix A to Plaintiffs' Memorandum of Law supporting their

cross-motion for summary judgment (docket entry no. 30 ("Pl. Mem.")) and also listed in the

---

[2]    A Vaughn index is "a list of documents, identified by number, title and description, that a
Government agency determines are responsive to a FOIA request" and "states the one or
more FOIA exemptions that the agency claims justify withholding each document."
ACLU v. DOJ, 844 F.3d 126, 129 n.4 (2d Cir. 2016) (explaining that the "term derives"
from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)).

DOE's <u>Vaughn</u> Index were properly redacted or withheld in their entirety from disclosure under Exemption 5 or Exemption 7.[3]

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  The DOE claims that the redacted or withheld material in several of the 25 records is protected from disclosure by the Deliberative Process Privilege ("the Privilege.")  (Docket entry no. 27 ("Def. Mem.") at 6-15.)  Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of several harms enumerated in 5 U.S.C. section 552(b)(7)(A-F).  5 U.S.C. § 552(b)(7).  The DOE claims that withheld or redacted material in several of the 25 records is protected from disclosure under Exemption 7 because release "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. section 552(b)(7)(A), and/or "would disclose techniques and procedures for law enforcement investigations or prosecutions."  5 U.S.C. section 552(b)(7)(E); (Def. Mem. at 15-17.)

The 25 records that are currently in dispute are emails and attachments to emails exchanged among DOE staff between February 14, 2018, and May 14, 2018.  (Smith Decl. ¶¶ 8-9; Pl. Mem. at 3-5.)   Plaintiffs group the contested records from which material has been withheld pursuant to Exemption 5 into three categories: (1) statements about existing policy; (2) press statements and briefings; and (3) meeting notes.  (Pl. Mem. at 11-18.)  Defendant adopts those terms in its reply memorandum supporting its motion for summary judgment (docket entry

---

[3]     As discussed <u>infra</u> at pages 29-30, Plaintiffs and Defendant also dispute redacted material within two documents not listed in Appendix A that the Court considers at issue due to the parties' mutual submission of arguments pertaining to those two records.  (<u>Vaughn</u> Index at 24, Bates 003498-003500; <u>id.</u> at 25, Bates 003501-003503.)

no. 32 ("Def. Reply")), and the Court does the same here.  The two records at issue containing

material the DOE has withheld pursuant to Exemption 7 consist of reports prepared by the

Department of Homeland Security ("DHS") and the Federal Bureau of Investigation ("FBI").

(Smith Decl. ¶ 19.)

       In support of its summary judgment motion, the DOE proffers a declaration from

Gregory Smith, the Director of the FOIA Service Center within the Office of the Secretary for

the DOE (docket entry no. 28), in which Mr. Smith explains that Plaintiffs' FOIA request relates

to the activities of the Federal Commission on School Safety ("FCSS" or "the Commission"),

which was comprised of multiple agencies, including the DOE, and created in the aftermath of

the February 14, 2018 shooting at Marjory Stoneman Douglas High School in Parkland, Florida.

(Smith Decl. ¶¶ 2, 6, 8; see also Pl. Mem. at 2 ("In March 2018, President Trump announced the

creation of the Federal Commission on School Safety.").)   The Commission was "tasked" with

"studying ways and proposing solutions in order to keep students safe and schools secure" and

"producing a report" containing "policy recommendations in an effort to help prevent future

tragedies[,]" which was presented to the President of the United States on December 18, 2018.

(Smith Decl. ¶¶ 6-7.)  In order to complete this assignment, the DOE "researched, analyzed, and

formulated such policy recommendations" and "engaged in significant . . . policy deliberations."

(Id. ¶ 7.)  Smith proffers that "the documents withheld from disclosure in this action, in one way

or another, reflect the Department's internal deliberations relating to its formulation of policy

recommendations on issues relating to school safety."  (Id.)

       According to Smith, the documents Plaintiffs categorize as statements of existing

policy include "[d]ocuments reflecting policy analysis and deliberations relating to the topic of

school safety" and "[m]emorand[a] prepared . . . cataloging . . . information relevant to

formulating a policy position on school safety issues" which reflected "Department officials culling through a broad universe of potentially relevant information and selectively choosing which information was relevant to issues being addressed by the Department and the FCSS." (Smith Decl. ¶ 17(e-f).)  Smith proffers that those documents cataloging relevant information "reflect discretion and judgment made by the Department in order to formulate policy positions." (Id. ¶ 17(f).)  In addition, Smith represents that these documents were "prepared prior to the Commission's final report" and that "[r]elease of these records would have a chilling effect on the agency's deliberations as agency staff would be less likely to offer full and candid recommendations if their deliberations were to be released to the public, particularly on an issue of such intense public interest" as school safety.  (Id. ¶ 17.)

With regard to the documents Plaintiffs categorize as press statements and briefings, Smith proffers that the Department withheld talking points containing "recommendations and opinions from staff to high-ranking officials on how policy and information may best be presented."  (Smith Decl. ¶ 14.)  These documents were prepared in advance of "public events" where input was sought on "potential policy issues for which final agency recommendations had not yet been made" and concerned "school safety," a subject "of extremely heightened public interest."  (Id.)  Smith asserts that disclosure of these documents would be detrimental "to the Department's deliberative processes—specifically, the process by which staff develops and recommends certain information they believe would be the most appropriate and beneficial for high-ranking officials to present."  (Id.)  The withheld materials also contain briefing materials "compiled by Departmental staff to prepare high-ranking officials for upcoming events" including "staff opinions, advice, and recommendations as to future events, as well as curated and selected factual information culled by staff, representing those sets

of facts the staff believe are of the greatest import to the official." (Id. ¶ 15.)  Smith represents

that disclosure of these documents "would have a significant chilling effect on the Department's

ability to prepare high-ranking officials to represent the Department and make informed

decisions on the Department's behalf, as staff would be less likely to provide the official with

candid recommendations if they believed those materials would be released publicly." (Id.)

With respect to the documents Plaintiffs categorize as meeting notes, Smith

proffers that these notes "reflect internal deliberations relating to the FCSS" including

"substantive policy discussions of the FCSS." (Smith Decl. ¶ 17(b).)  According to Smith, these

documents "were prepared prior to the Commission's final report[,]" do "not bind agency

officials or members of the public," and their release would not only chill agency deliberations,

as "staff would be less likely to offer full and candid recommendations . . . particularly on an

issue of such intense public interest" like school safety, but would also "potentially confuse the

public as to the actual final recommendations of the Commission or the actual grounds relied

upon to reach its final position." (Id. ¶ 17.)

Regarding the documents withheld pursuant to Exemption 7, Smith proffers that

the DOE withheld "lists and descriptions of reported public safety incidents at schools" prepared

by DHS which include the "identification of factual details of particular interest to DHS in

[DHS'] investigations of such incidents." (Smith Decl. ¶ 19.)  The DOE also withheld "FBI

reports related to specific and identified threats to schools." (Id.)  Smith testifies that disclosure

of these DHS and FBI reports "could alert current investigatory targets as to the existence and/or

scope of an open investigation, thus impeding the investigation" and may also "inform the public

as to the specific analysis DHS or the FBI undertake when investigating public safety issues

related to schools" due to the "release of the details that DHS and the FBI consider of particular interest for internal circulation."  (Id.)

Smith proffers that the DOE has "conducted a line-by-line review" of the records in which material was withheld.  (Smith Decl. ¶¶ 18, 20.)  In regard to the documents from which information was withheld pursuant to Exemption 5, Smith testifies that, "[w]herever possible, purely factual information has been segregated and released[,]" and where factual information was withheld, it "was either inextricably intertwined with deliberative content . . . or, in some instances, the factual information amounted to the selection of certain facts from a broader universe of facts in a manner that reveals the writer's or editor's analysis as to which specific facts are most relevant to their deliberative position."  (Id. ¶ 18.)  As to the DHS and FBI reports withheld under Exemption 7, Smith proffers that the "redactions asserted have been reviewed and all segregable, releasable information . . . released."  (Id. ¶ 20.)

D<small>ISCUSSION</small>

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F<small>ED</small> R. C<small>IV</small>. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law[,]" and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  In evaluating a motion for summary judgment, the Court must "construe all evidence

in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

The FOIA was enacted to "assure the availability of Government information necessary to an informed electorate." H.R. REP. No. 89-1497, 1966 WL 4304, at 2429. The FOIA struck a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." Id. at 2423. Accordingly, the FOIA "mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7 (2001) (internal citation omitted). The Supreme Court has repeatedly stated that these exemptions must be interpreted narrowly to accomplish the FOIA's goal of broad disclosure. Id. at 8. When withholding is challenged, the Court must determine de novo whether the agency's claimed exemption applies. Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009).

It is the agency's burden to demonstrate that withheld information falls within a FOIA exemption. See Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)). "[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." Ferguson v. FBI, No. 89-CIV-5071-RPP, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd, 83 F.3d 41 (2d Cir. 1996) (citing Carney, 19 F.3d at 812). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Wilner, 592 F.3d at 73 (internal quotation marks and citation omitted).  Courts accord agency

affidavits a presumption of good faith.  See Carney, 19 F.3d at 812; see also Immerso v. U.S.

Dep't of Labor, No. 20-4064, 2022 WL 17333083, at *1 (2d Cir. Nov. 30, 2022) (explaining that

presumption of good faith attaches to an agency's declarations).


FOIA Exemption 5

                The DOE argues that FOIA Exemption 5 applies to protect several of the records

described in Plaintiffs' Appendix A from disclosure under FOIA.  (Def. Mem. at 6-15; Smith

Decl. ¶¶ 13-18.)  Exemption 5 protects from disclosure "inter-agency or intra-agency

memorandums or letters [that] would not be available by law to a party other than an agency in

litigation with the agency."  Klamath, 532 U.S. at 2 (quoting 5 U.S.C. § 552(b)(5)).  "Stated

simply, agency documents which would not be obtainable by a private litigant in an action

against the agency under normal discovery rules (e.g., attorney-client, work-product, executive

privilege) are protected from disclosure under Exemption 5."  Tigue v. U.S. Dep't of Justice, 312

F.3d 70, 76 (2d Cir. 2002) (quoting Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 481 (2d Cir.

1999)).  The DOE here relies upon the Deliberative Process Privilege, which is "encompassed

within the executive privilege," Grand Cent. P'ship, 166 F.3d at 481, and protects the "decision

making processes of government agencies . . . [by exempting from disclosure] documents

reflecting advisory opinions, recommendations and deliberations comprising part of a process by

which governmental decisions and policies are formulated."  N.L.R.B. v. Sears, Roebuck & Co.,

421 U.S. 132, 150 (1975) (internal quotation marks and citations omitted); see also Knight First

Amendment Institute at Columbia Univ. v. USCIS, 40 F. 4th 318, 334 (2d Cir. Apr. 6, 2022)

("[T]he deliberative process privilege protects only those records that bear on the formulation or

exercise of policy-oriented judgment." (internal quotation marks and citation omitted)).  The

rationale animating the Privilege is "the obvious realization that officials will not communicate

candidly among themselves if each remark is a potential item of discovery and front-page news,

and its object is to enhance 'the quality of agency decisions,' by protecting open and frank

discussion among those who make them within the Government."  Tigue, 312 F.3d at 76

(quoting Klamath, 532 U.S. at 8-9).  The Privilege applies only to documents that are both (1)

"predecisional" and (2) "deliberative."[4]  Knight First Amendement, 40 F. 4th at 334.  In addition,

under the FOIA Improvement Act of 2016, "[a]n agency shall withhold information . . . only if

the agency reasonably foresees that disclosure would harm an interest protected by an exemption

described in subsection (b).'"  New York Times Co. v. Dep't of Defense, No. 19-CV-5779-GBD,

2021 WL 3774410, at *5 (S.D.N.Y. Aug. 25, 2021) (quoting 5 U.S.C. § 552 (a)(8)(A)(i)).  Thus,

an agency "must explain how [disclosure of] a particular Exemption 5 withholding would harm

the agency's deliberative process."  Id. (internal quotation marks and citation omitted); see also

New York Times Co. v. Dep't of Health & Human Servs., 513 F. Supp. 3d 337, 353-54

(S.D.N.Y. 2021) (explaining that mere "'boilerplate statements and generic and nebulous

articulations of harm'"  do not suffice and requiring disclosure of report where agency merely

claimed disclosure "'would have a chilling effect on future participation'" because participants

had expectation of confidentiality (citations omitted)).

   A document is predecisional if it is "prepared in order to assist an agency

decisionmaker in arriving at his decision."  Nat'l Council of La Raza v. Dep't of Justice, 411

---

[4]  Exemption 5 also requires that the document be an inter-agency or intra-agency
document.  5 U.S.C. § 552(b)(5).  The record here demonstrates, and the parties do not
dispute, that the documents at issue satisfy this requirement.  (See Smith Decl. ¶ 8
(explaining Plaintiffs' request sought "emails sent and received by" individuals at the
DOE containing one or more search terms).)

F.3d 350, 356 (2d Cir. 2005) (internal quotation marks and citation omitted).  "In assessing whether a document is predecisional, courts also consider whether the government can: (i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates."  Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec., 376 F. Supp. 3d 345, 357 (S.D.N.Y. 2019) (citation omitted).  While an agency need not demonstrate that an actual decision resulted from the document for which the privilege is claimed, the agency must demonstrate that the document "relates to a specific decision *or a specific decisionmaking process* and was generated before the conclusion of that decision or process."  Natural Res. Def. Council v. U.S. Envtl. Prot. Agency, 19 F.4th 177, 192 (2d Cir. Nov. 29, 2021) [hereinafter "NRDC v. EPA"].

A document is deliberative if it is "actually . . . related to the process by which policies are formulated."  Grand Cent. P'ship, 166 F.3d at 482 (internal quotation marks and citation omitted).  Courts have looked to factors such as whether the document "(i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency."  Id. (quoting Providence Journal Co. v. U.S. Dep't of the Army, 981 F.2d 552, 559 (1st Cir. 1992)).  As a general matter, the deliberative process "privilege generally does not extend to purely factual material," Natural Res. Def. Council v. U.S. Envtl. Prot. Agency, 954 F.3d 150, 157 (2d Cir. 2020), and any non-privileged material that is "reasonably segregable" from the deliberative portions of records must be produced.  Tigue, 312 F.3d at 82 (quoting 5 U.S.C. § 552(b)).

Statements of Existing Policy

Plaintiffs first contest the withholding of information they describe as statements of existing DOE and non-DOE policy or legislation.  With regard to statements of DOE policy, Plaintiffs contend that the DOE improperly redacted, pursuant to Exemption 5, information within a memorandum "relating to DOE's discipline guidance" reflecting "an analysis of past agency guidance and its potential relevance or lack thereof to subsequent school safety related events."  (Docket entry no. 28-1 ("Vaughn Index") at 1, Bates 002876-002881.)  Plaintiffs also argue that the DOE improperly withheld a "[m]emorandum relating to DOE's programs and activities relating to school safety" and "reflecting internal deliberations on particular DOE programs, activities and initiatives that may be relevant to school safety."  (Id. at 3, Bates 002981.)  Plaintiffs argue that these documents are not deliberative because they "pertain[] to 'the application'—as opposed to 'the formulation'—of policies" (Pl. Mem. at 11 (citation omitted)), and Exemption 5 does not protect from disclosure "opinions and interpretations which embody the agency's effective law and policy."  (Id. (internal quotation marks and citation omitted).)  The DOE argues that Plaintiffs mischaracterize these two documents, representing that they are "not simply statements about existing policy" but rather "'reflect[] policy analysis and deliberations relating to the topic of school safety.'"  (Docket entry no. 32 ("Def. Reply") at 3 (quoting Smith Decl. ¶ 17(e).)  For example, with regard to document 002981 in the Vaughn index, the DOE argues that a "memorandum discussing whether" guidance "related to school discipline and how/whether such discipline should be administered by local school districts" could have been a "contributing factor to . . . school safety incidents is a document rich in policy considerations."  (Id. at 3-4.)

Exemption 5 does not protect "statements of policy and interpretations which have been adopted by the agency." Nat'l Immig. Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec., 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012) (quoting 5 U.S.C. § 552(a)(2)(B)). Thus, while "papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be" are protected from disclosure under Exemption 5, "opinions and interpretations which embody the agency's effective law and policy" are not predecisional and must be disclosed.  Id. (quoting Sears, Roebuck, & Co., 421 U.S. at 153; see also Am. Civ. Liberties Union v. Dep't of Defense, No. 15-CV-9317, 2017 WL 4326524, at *6 (S.D.N.Y. Sept. 27, 2017) ("[A] document is not covered by the deliberative process privilege when the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy, in other words, its working law." (internal modifications and quotations omitted)).  The critical point of differentiation is whether the document "affect[ed] the formulation of policy," and thus is exempt from disclosure, or reflected "the process of interpretation and exposition" of existing policy and therefore must be disclosed. Nat'l Immig. Project, 868 F. Supp. 2d. at 295.

To the extent the two documents relating to existing DOE policy and programs consist of descriptions of those initiatives, they reflect the DOE's "effective law and policy" and are not predecisional, nor are they worthy of protection under Exemption 5.  Am. Civ. Liberties Union, 2017 WL 4326524, at *6.  See also NRDC v. EPA, 19 F.4th at 192 (explaining that the predecisional "requirement excludes records that discuss a decision already made").  However, to the extent the documents reflect an analysis of how DOE guidance informs the agency's thinking about "school safety" in aid of the Commission's development of policy recommendations, such analysis would be privileged as it would reveal the agency's "thinking in

the process of working out its policy," <u>Am. Civ. Liberties Union</u>, 2017 WL 4326524, at *6 (internal quotation marks and citation omitted), in regard to how "to keep students safe and schools secure."  (Smith Decl. ¶ 6.); <u>see also</u> <u>Adelante</u>, 376 F. Supp. 3d at 363 (finding defendant "may have a stronger argument that the [e]xperts' inclusion or exclusion of specific facts would be more revelatory of broader policy determinations" and thus "sections of . . . [e]xperts' [r]eports concerning broader recommendations or summaries" may be privileged under Exemption 5); <u>NRDC v. EPA</u>, 19 F.4th at 192 (explaining that a "document that 'reflects the consummation of the agency's decisionmaking process" is excluded from the privilege but an agency may withhold information relating to a "specific decisionmaking process" including potentially a  "critical review of its regulations").  Put another way, in contrast to a situation in which an agency document "focuses on how existing policy applies to 'specific cases[,]'" <u>Nat'l Immig. Project</u>, 868 F. Supp. 2d at 293 (citation omitted), and hence is not predecisional, the two documents at issue here, drafted between February 14, 2018, and May 14, 2018, appear, based on representations made in the Smith declaration and the <u>Vaughn</u> index, to reflect agency deliberations in connection with the ongoing effort of developing the Commission's recommendations on school safety, which were presented in the final report to the President in December 2018.  (<u>See</u> Smith Decl. ¶¶ 6, 17(e) (including Bates 002876-002881 and Bates 002981 in list of "[d]ocuments reflecting policy analysis and deliberations relating to the topic of school safety"); <u>Vaughn</u> index at 1 (describing Bates 002876-002881 as a "memorandum provid[ing] an analysis of past agency guidance and its potential relevance or lack thereof to subsequent school safety related events"); <u>id.</u> at 3 (describing Bates 002981 as "[m]emorandum reflecting internal deliberations on particular DOE programs . . . that may be relevant to school safety").)

However, the Vaughn index is insufficiently precise to permit the Court to determine definitively whether the withheld material from Bates 002876-002881 and Bates 002981 falls into the first category (description of existing policy) or the second category (development of new policy) described in the preceding paragraph.  Especially because the second memorandum "reflecting internal deliberations on particular DOE programs, activities, and initiatives" was withheld in full, the Court is concerned that DOE may have improperly withheld information describing its existing policies that is not eligible for protection under Exemption 5.  Thus, the DOE is directed to re-review these two documents in a manner consistent with the Court's analysis, provide additional information to Plaintiffs as appropriate, and make corresponding updates to the Vaughn index.

Plaintiffs also argue that the DOE improperly withheld statements of non-DOE policy under Exemption 5.  The first document is one that DOE describes as: (1) a "[m]emorandum summarizing President Obama's 'Now is the Time' initiative" including research, analysis, and recommendations relating to progress made on that initiative.  (Vaughn Index, at 22, Bates 003232-003233).  As was the case with the two documents described above, Bates 002876-002881 and Bates 002981, the Smith Declaration proffers that this a document "reflecting policy analysis and deliberations relating to the topic of school safety."  (Smith Decl. ¶ 17(e).)

The Court finds that the Vaughn Index and the Smith Declaration are similarly lacking in sufficient detail to permit the Court to determine whether the DOE impermissibly withheld any factual content describing the existing "Now is the Time initiative."  The document was withheld in full, but to the extent the document contains purely factual material regarding the pre-existing initiative that is not intertwined with the DOE's analysis and recommendations

regarding school safety, that information is severable and should be produced.  See Adelante, 376 F. Supp. 3d at 363-64 (finding Defendants' submissions "insufficiently precise" to determine whether factual material within expert reports was "inextricably intertwined with policy recommendations and can properly be withheld").  Thus, the Court orders the DOE to re-review Bates 003232-003233 in light of the Court's analysis, supplement its production if appropriate, and update the Vaughn index accordingly.

The remainder of the documents at issue that Plaintiffs categorize as statements of non-DOE policy consist of: a draft memorandum "analyzing legislation introduced" in Congress over a certain time period "relevant to particular, identified school safety themes" (Vaughn Index at 3, Bates 002986-002912); a "[c]hart analyzing state legislation in the gun control context enacted in support of specific identified policy objectives" (id. at 22, Bates 003234-003409); a chart reflecting "research, analysis, and recommendations relating to the progress made by multiple entities . . . on various aspects of school safety" (id. at 24, Bates 003414-003497); and memoranda "reflecting internal research, analysis, and recommendations" relating to: (1) "gun control measures in various states" (id. at 21, Bates 003226-003227), (2) "school safety drills and exercises, including how various states approach [the] issue" (id. at 23, Bates 003410-003411), and (3) "whether states permit firearms at their schools" (id., Bates 003412-003413).  Plaintiffs argue that these documents are neither predecisional nor deliberative because they consist of "factual background research on existing state and federal laws."  (Pl. Mem. at 12-13).  The DOE argues that this material was properly withheld under the Deliberative Process Privilege because "the compiling of relevant facts or data from a broader universe is itself deliberative," and the "DOE was not compiling this information simply to have a catalog of these legislative and regulatory efforts" but rather "was selecting those pieces of legislation and

regulation that it believed to be relevant to its formulation of policy." (Def. Reply at 4-5.) Hence, disclosure of such factual information "would implicitly suggest that such factors played a role in [the agency's] analysis." (Id. at 5 (citation omitted).)

The Smith Declaration proffers that the memoranda "cataloging . . . information" including "legislation" reflected the efforts of "Department officials culling through a broad universe of potentially relevant information and selectively choosing which information was relevant to issues being addressed by the Department and the FCSS." (Smith Decl. ¶ 17(f); see id. (explaining that chosen information was "relevant to formulating a policy position on school safety issues").) Smith proffers that these documents "reflect discretion and judgment made by the Department in order to formulate policy positions" because the officials preparing the documents "only select[ed] certain facts from a much broader universe of facts." (Id.)

Although the Deliberative Process Privilege does not generally extend to "purely factual material," NAACP Legal Defense & Educational Fund, Inc. v. U.S. Dep't of Justice, No. 18-CV-4354-PKC, 2020 WL 5237765, at *6 (S.D.N.Y. Sept. 2, 2020) (internal quotation marks and citation omitted), the "selection and organization of factual material is protectable under Exemption 5 where the choice to include particular information would disclose the agency's deliberative process." Id. at *8-9 (finding factual material in draft report privileged where the "selection and inclusion of particular facts and data in a draft version of [a] report . . . reflect[ed] the subjective judgment of the drafters"). For example, a factual narrative would be privileged where disclosure would "show the authors' judgment in 'cull[ing] the relevant documents, extract[ing] pertinent facts, [and] organiz[ing] them to suit a specific purpose.'" Color of Change v. U.S. Dep't of Homeland Sec., 325 F. Supp. 3d 447, 455 (S.D.N.Y. 2018) (citation omitted); see also id. (explaining that factual material can reflect an "exercise of judgment" when

"pertinent material" is extracted "from a vast number of documents for the benefit of an official

called upon to take discretionary action" (internal quotation marks and citation omitted)).   In

contrast, where factual material "exist[s] in a vacuum" and its disclosure "would not reveal

editorial judgments," it is not eligible for protection under the Privilege.  Id. at 455-56; see also

Mapother v. Dep't of Justice, 3 F.3d 1533, 1539-1540 (D.C. Cir. 1993) (finding section of

document that set forth an individual's military service in "chronological order" was not

protectable under Exemption 5 where the section "reflect[ed] no point of view" and amounted to

an "inventory" with "no known datum . . . omitted"); Nat'l Res. Def. Council v. EPA, 954 F.3d

150, 157-58 (2d Cir. 2020) (finding core model not eligible for protection under Exemption 5

because the model "[did] not involve 'culling and selection of relevant facts'" and its disclosure

"could, at most, reveal the various analytical tools [the agency had] at its disposal").

      The Court finds that the evidence proffered by the DOE indicates sufficiently that

disclosure of the research memoranda and charts at issue "would expose [the] agency's

decisionmaking process in such a way as to discourage candid discussion within the agency and

thereby undermine the agency's ability to perform its functions."  Color of Change, 325 F. Supp.

3d at 445 (finding factual portions of drafts privileged even if they "originated from public

sources" because "an analyst and intern compiled and arranged those materials to support the

positions they espoused" and hence were "deliberative") (internal quotation marks and citation

omitted); see also Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin., 610 F.2d 70,

85 (2d Cir. 1979) ("Disclosing factual segments from the . . . summaries would reveal the

deliberative process of summarization itself by demonstrating which facts in the massive rule-

making record were considered significant by the decisionmaker.")  Unlike an inventory of

factual information gathered without a point of view in mind, and no data omitted, see Mapother,

3 F.3d at 1539-1540, Smith testifies that the memoranda at issue here resulted from a selective

process in which Department officials chose particular information, including legislation and

regulations, they deemed "relevant to formulating a policy position on school safety issues."

(Smith Decl. ¶ 17(f).)   This information is supplemented by the justifications included in the

Vaughn index, which emphasize that these memoranda reflect factual information "relevant to

particular, identified school safety themes" (Vaughn Index at 3, Bates 002986-002912), such as

"gun control measures in various states" (id. at 21, Bates 003226-003227; see also id. at 22;

Bates 003234-003409) and intertwined with "analysis" and/or "recommendations" (id. at 22-24,

Bates 003410-003411, 003412-003413, 003414-003497).   On the basis of this evidence, the

Court finds that these memoranda are deliberative and, because they were prepared between

February 14, 2018, and May 14, 2018, in support of the Commission's efforts to develop its

policy recommendations on school safety, which were not presented until December 18, 2018,

the Court also finds they are predecisional. (Smith Decl. ¶¶ 6, 8.)

       Moreover, the Smith Declaration proffers that the Department has "conducted a

line-by-line review of these records" and "[w]herever possible, purely factual information has

been segregated and released."  (Smith Decl. ¶ 18.)  To the extent factual information was

withheld, Smith represents that the information was "either inextricably intertwined with

deliberative content, such that the facts could not be released without exposing the deliberative

information, or, in some instances, [that] the factual information amounted to the selection of

certain facts from a broader universe of facts in a manner that reveals the writer's or editor's

analysis as to which specific facts are most relevant to their deliberative position."  (Id.)  An

affidavit submitted by an agency is "accorded a presumption of good faith[,]" Am Civ. Liberties

Union v. Dep't of Justice, 210 F. Supp. 3d 467, 475 (S.D.N.Y. 2016) (internal quotation marks

and citation omitted), and courts often rely on this type of affirmation that an agency has

complied with its obligation to disclose "reasonably segregable" material under 5 U.S.C. section

552(b).  See e.g., Seife v. U.S. Food & Drug Admin., 553 F. Supp. 3d 148, 171 (S.D.N.Y. 2021);

Spadaro v. U.S. Customs & Border Protection, No. 16-CV-16-RJS, 2019 WL 1368786, at *7

(S.D.N.Y. Mar. 25, 2019).  Plaintiffs have not made "a showing of bad faith on the part of the

agency sufficient to impugn the agency's affidavit[]" in this action.  NAACP Legal Defense,

2020 WL 5237765, at *4 (internal quotation marks and citation omitted).

       The DOE has also met its burden of demonstrating that disclosure of these

memoranda would cause foreseeable harm to the agency's deliberative process.  The Smith

Declaration proffers that disclosure would result in agency staff being "less likely to offer full

and candid recommendations if their deliberations were to be released to the public, particularly

on an issue of such intense public interest" as school safety.  (Smith Decl. ¶ 17.)  The DOE

submits that the topic of school safety "is a subject of intense national interest" which "results in

hotly contested policy debates" and a "staffer at DOE may be less willing to offer candid advice

on such a topic if that staffer knows his or her statements will appear" in public forums.  (Def.

Reply at 11-12.)

       Plaintiffs assert that these statements are not credible, and that no harm will result

from the disclosure of the facts the DOE considered significant in its policymaking process

because (1) "[a]gency officials will always strive to present relevant background information to

their superiors;" and (2) "[r]evealing what information and ideas the agency considered in

arriving at those recommendations" contained in the Commission's final report "would allow the

public to better understand and evaluate" them.  (Pl. Mem. at 19.)  Plaintiffs take too narrow a

view of the Deliberative Process Privilege.  As explained above, the organization of facts to suit

particular policy objectives can form a critical part of an agency's deliberative process and reveal the information the agency considered most significant.  Color of Change, 325 F. Supp. 3d at 445 (finding factual portions of drafts privileged even if they "originated from public sources" because "an analyst and intern compiled and arranged those materials to support the positions they espoused" and hence the portions of the draft were "deliberative").  Indeed, the DOE proffers the helpful hypothetical that, if it "catalogued all of the relevant state and federal initiatives relevant to arming school staff members, but did not analyze gun control legislation, that would certainly shed light on DOE's internal deliberations."  (Def. Reply at 5.)  The Court finds that the DOE has met its burden and that the withholding of the material in documents with the following Bates numbers was proper under Exemption 5: 002986-002912; 003226-003227; 003234-003409; 003410-003411; 003412-003413; 003414-003497.

### Press Statements and Briefings

Plaintiffs argue that the DOE impermissibly withheld press and briefing materials, including (1) a draft memorandum "listing particular statements" made by "Secretary Kirstjen Nielsen and Attorney General Jeffrey Sessions in press briefings and media quotations" (Vaughn Index at 4, Bates 002913-002915); (2) an "analysis of a media article and its potential application to DOE policy relating to school safety" (id. at 41, Bates 003856-003858); and (3) internal "briefing book[s]" or "memorand[a]" "for the Secretary's upcoming events" (id. at 8, Bates 002937-003038; id. at 14, Bates 003094-003111; id. at 15, Bates 003127-003186; id. at 17, Bates 003192-003203; id. at 18, Bates 003204-003206; id., Bates 003207-003208).

The DOE proffers that the draft memorandum compiling particular statements made by two public officials  "reflects internal judgement and deliberation in selecting and

listing particular statements from public officials that may be relevant to DOE's developing

approach to school safety."  (<u>Vaughn</u> Index at 4, Bates 002913-002915.)  In addition, Smith

represents that this memorandum was prepared "prior to the Commission's final report" by

officials "culling through a broad universe of potentially relevant information and selectively

choosing which information was relevant to issues being addressed by the Department and the

FCSS."  (Smith Decl. ¶¶ 17; 17(f)).  Smith testifies that release of this information would be

harmful because "agency staff would be less likely to offer full and candid recommendations if

their deliberations were to be released to the public, particularly on an issue of such intense

public interest."  (<u>Id.</u> ¶ 17.)  Moreover, the DOE argues disclosure of this type of document

cataloging the information officials deemed relevant to the Commission's policy-making process

would "shed light on DOE's internal deliberations."  (Def. Reply at 5.)  For the same reasons the

Court cited in finding that the DOE's charts and memoranda detailing its research and analysis of

relevant federal and state legislation to be properly withheld under the Deliberative Process

Privilege, the Court finds that this memorandum is also protected under the Privilege.  <u>See</u>

<u>NAACP Legal Defense</u>, 2020 WL 5237765, at *7 (factual material protectable where "selection

and organization" of "particular factual information would disclose the agency's deliberative

process").

    With respect to the "analysis of a media article," DOE argues that although the

"media article is a matter of public record . . . . internal deliberations as to whether this media

article should affect DOE policy are clearly deliberative in nature."  (Def. Reply at 6 n.1.)  DOE

proffers that redacted material in this email concerned an "analysis" of the article and "its

potential application to DOE policy relating to school safety."  (Vaughn Index at 41, Bates

003956-003858).  Thus, because the email "related to the process by which [the] policies [of the

Commission] [were] formulated," <u>Grand Cent. P'ship</u>, 166 F.3d at 482 (internal quotation marks and citation omitted), and predates the Commission's final report (<u>see</u> Vaughn Index at 41, Bates 003856-003858), the Court finds that the withheld material was deliberative and predecisional. Moreover, because the Court has already determined that the DOE has met its burden of showing that harm to the deliberative process would result from the disclosure of these types of "documents reflecting policy analysis and deliberations relating to the topic of school safety," the Court finds that the DOE's redactions were proper under Exemption 5.

       Plaintiffs also submit that the Department improperly withheld information contained within briefing memoranda provided to Secretary DeVos to prepare her for upcoming events.  In support of their motion for summary judgment, Plaintiffs argue that the redacted material within these briefing memoranda does not fall within Exemption 5 because (1) "[t]alking points for public appearances of press interviews are required to be disclosed" because "'messaging' is no more than an explanation of existing policy, which is not protected by the deliberative process privilege" (Pl. Mem. at 13 (citation omitted)); and (2) to the extent the DOE has withheld factual material within the briefing documents, that material is segregable and must be disclosed.  (<u>Id.</u> at 13-16.)  In response, the DOE submits that (1) documents regarding "an agency's decision regarding how to present its substantive policies to the public often involves the evaluation of alternative public relations policies" and hence may be found to be deliberative and exempt from disclosure under Exemption 5 (Def. Reply at 6 (internal quotation marks and citation omitted)); and (2) to the extent factual material was withheld within these briefing memoranda, the selection and organization of that factual material reflects the agency's deliberative process.  (<u>Id.</u> at 7.)

After the parties completed their submissions in connection with the cross-motions for summary judgment in this action, the United States Court of Appeals for the Second Circuit rendered its decision in NRDC v. EPA, 19 F.4th 177 (2d Cir. Nov. 29, 2021), and for the first time, explicitly addressed whether messaging documents are eligible for protection under the Deliberative Process Privilege.  In its evaluation of this issue, the Court of Appeals reasoned that an "agency's decision regarding how to communicate its policies and actions to Congress, the public, and other stakeholders can have substantial consequences[,]" as an "agency might attract public support that it can leverage to pursue its policy agenda or invite a backlash that would undermine that agenda." NRDC v. EPA, 19 F. 4th at 185-86.  For these reasons, "an agency's decision regarding how to present its substantive policies to the public often involves the evaluation of alternative public relations policies, policies which by their very nature are audience-sensitive and must anticipate public reaction." Id. at 186 (quoting Seife v. Dep't of State, 298 F. Supp. 3d 592, 616 (S.D.N.Y. 2018)).  Thus, communications decisions "involve 'the formulation or exercise of policy-oriented judgment,' [and] deliberations about—and— preceding those decisions are protected by the deliberative process privilege." Id. (quoting Grand Cent. P'ship, 166 F.3d at 482); see also id. at 189-90 (explaining that deliberations regarding communications decisions are deliberative and eligible for protection if they reflect the "agency's effort to determine what to say about a policy and how to formulate that message" but not if they solely "bear on technical matters . . . such as what time of day an agency spokesman will be available to deliver that message").  This holds true even if the "underlying decision or policy has already been established by the agency" because the "communications decision [still] implicates the agency's policymaking role." Id. (internal quotation marks and citations omitted).

Here, the documents at issue concern briefing memoranda for Secretary DeVos' upcoming interviews with "Fox and Friends" and "Today," reflecting "relevant information" "staff selected" as well as "various recommendations to prepare [the Secretary]" for these upcoming events "relating to the issue of school safety" (Vaughn Index at 18, Bates 003204-003206; id., Bates 003207-003208), as well as "[i]nternal briefing book[s] for the Secretary's upcoming events reflecting frank internal communication in which staff selected what they felt were the most relevant issues to brief [the Secretary]."  (Id. at 8, Bates 002937-003038; id. at 14, Bates 003094-003111; id. at 15, Bates 003127-003186;  id. at 17, Bates 003192-003203.)  The Smith Declaration proffers that the talking points for Secretary DeVos' upcoming interviews "were prepared before final remarks were made," contained "recommendations and opinions from staff to high-ranking officials on how policy and information may best be presented" on "school safety," a matter of "extremely heightened public interest[.]"  (Smith Decl. ¶ 14.) Similarly, the Smith Declaration proffers that the briefing books consisted of "material compiled by Departmental staff to prepare high-ranking official for upcoming events" and contained "staff opinions, advice, and recommendations as to [those] future events."  (Id. ¶ 15.)  Because these documents reflect internal strategy for upcoming public events seeking input on the Commission's policy-making process of developing recommendations on school safety, the Court finds that they are predecisional and deliberative.  (See id. ¶ 7 (explaining the documents withheld reflect "internal deliberations relating to [the DOE's] formulation of policy recommendations on issues relating to school safety")); see also Seife v. FDA, 553 F. Supp. 3d at 165-66, 170 (finding documents relating to strategy for upcoming announcement of FDA's recommendations relating to premarket review process for medical devices eligible for protection under the Privilege).

Moreover, to the extent that factual material was withheld in these talking points and briefing memoranda, the DOE has proffered that the selected factual narrative was "curated and selected. . . [, and] culled by staff, representing those sets of facts the staff believe are of the greatest import to the official."  (Smith Decl. ¶ 15; see id. ¶ 14 (explaining documents reflecting staff's development of "certain information they believe would be the most appropriate and beneficial . . . to present").)  Based on these proffers, together with the DOE's representations that purely factual information has been segregated and produced, see id. ¶ 18, the Court finds that the DOE has proffered sufficient evidence to demonstrate that the factual information withheld in these documents was "assembled through an exercise of judgment," Color of Change, 325 F. Supp. 3d at 445 (internal quotation marks and citation omitted), "intertwined with deliberative policy discussions," Adelante, 376 F. Supp. 3d at 363-64 (internal quotation marks and citation omitted), and thus protected under the Privilege.  To the extent Plaintiffs argue that permitting factual material to be withheld would obliterate the "core to Exemption 5" distinguishing "between factual statements and statements of opinion," Plaintiffs take an improperly narrow view of the law.  (Pl. Mem. at 15-16.)

The DOE has also met its burden of establishing that disclosure would lead to reasonably foreseeable harm to the agency's deliberative processes.  The Smith Declaration proffers that disclosure of the talking points and briefing materials at issue would harm the process by which "staff develops and recommends certain information they believe would be the most appropriate and beneficial for high-ranking officials to present . . . . particularly where the subject matter of the policy is of extremely heightened public interest, such as school safety, and particularly where, as here, the public events sought input on potential policy issues for which final agency recommendations had not yet been made."  (Smith Decl. ¶ 14).  Release of these

materials would lessen the ability of staff members to "prepare high-ranking officials to represent the Department and make informed decisions on the Department's behalf" as well as to provide "candid recommendations." (Id. ¶ 15.) Thus, the Court finds that the DOE has met its burden of demonstrating that the talking points and briefing memoranda at issue here were properly withheld pursuant to Exemption 5.

Meeting Notes

Plaintiffs submit that the DOE impermissibly withheld notes from "intra-agency meeting[s] on school safety." (Vaughn Index at 5, Bates 002925-002926; id., Bates 002927-002928.) According to the DOE, these meeting notes "memoraliz[e] candid internal deliberations summarizing the recommendations, proposed next steps, and documents reviewed" by the meeting attendees. (Id.) The Smith Declaration proffers that these meeting notes reflect "substantive policy discussions of the FCSS" including "internal deliberations of various agencies." (Smith Decl. ¶ 17(b).) Because these documents reflect "opinions, recommendations and deliberations comprising part of the process by which" the Commission formulated its "decisions and policies" related to school safety in preparation for its final report, the Court finds that they are protected from disclosure under the Deliberative Process Privilege. Sears, Roebuck & Co., 421 U.S. at 150; see also New York Times Co. v. U.S. Dep't of State, No. 19-CV-645-JSR, 2019 WL 2994288, at *3 (S.D.N.Y. July 9, 2019) (finding communications regarding "possible attendees" at "meetings and possible topics of conversation" to be deliberative as it "reflects the planning process of various executive branch actors"). To the extent Plaintiffs argue that the notes summarizing the "documents reviewed" at the intra-agency meetings reflect purely factual material that must be disclosed, see Pl. Mem. at 16-17, that argument is unavailing

in light of the Court's determination above that factual material, when selected and organized pursuant to particular policy objectives, reflects the agency's deliberative process.  See Mapother, 3 F. 3d at 1538-40 (finding factual material within draft report privileged where it was "assembled through an exercise of judgment" and "the task assigned" was to "cull the relevant documents, extract pertinent facts, [and] organize them to suit a specific purpose"); NAACP Legal Defense, 2020 WL 5237765, at *7 (finding factual material in draft report properly redacted pursuant to Exemption 5 where disclosure "would reveal what the government considered significant to the project during the preliminary stages of creating the . . . recommendation").

Plaintiffs argue that the DOE cannot meet its burden to identify reasonably foreseeable harm that would result from disclosure of the meeting minutes because the Commission's "final report has already disclosed information about the differing policy views presented at various commission meetings[.]"  (Pl. Mem. at 17.)  However, as the DOE notes, Plaintiffs' "argument misses the point" because the "fact that the final report did indeed note that the recommendations contained therein were the result of vigorous policy debates is the very reason that the deliberative process privilege must be enforced" -- without the privilege, "staff would be less willing to engage in those debates, . . . and the executive branch's decision-making process would be hampered as a result."  (Def. Reply at 12); see Tigue, 312 F.3d at 76 (explaining the purpose of the Privilege is that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news" (internal quotation marks and citation omitted)).

In their Memorandum of Law, Plaintiffs also contest the DOE's withholding of materials related to "organizational meeting[s]" of the FCSS that were not included in Plaintiffs'

Appendix A identifying the records at issue.  (Pl. Mem. at 16; <u>Vaughn</u> Index at 24, Bates 003498-003500; <u>id.</u> at 25, Bates 003501-003503.)  The DOE did, however, submit arguments in relation to those two additional documents, <u>see</u> Def. Reply at 8, and the Court will consider the evidence based on the submissions and the parties' arguments.  The DOE represents that the meeting notes concern the "scope of the school safety commission's work, location of meetings, timeline, and topics of discussion."  (<u>Vaughn</u> Index at 24, Bates 003498-003500; <u>id.</u> at 25, Bates 003501-003503.)  To the extent that the meeting notes describe the "scope of the [Commission's] work," the "timeline" involved, and the "topics of discussion," in support of its development of its recommendations, the Court finds that such material "reflects the planning process of" the Commission and is sufficiently deliberative.  <u>New York Times Co.</u>, 2019 WL 2994288, at *3.  However, the Court finds that any redacted information relating to the "location of [the Commission's] meetings" "is not predecisional, as it did not 'actually help[] . . . officers within [the Commission] make a specific policy decision,'" <u>id.</u> (quoting <u>Nat'l Immig. Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.</u>, 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012)), nor "bear on the formulation or exercise of policy-oriented judgment."  <u>Id.</u> (quoting <u>Tigue</u>, 312 F.3d at 80).  Rather, information about the locations of meetings reflects purely factual material of the type that is not reflective of the Commission's policy-making process and must be disclosed.  (<u>Id.</u> (directing disclosure of "list of locations" the Secretary "planned to visit"); <u>Mapother</u>, 3 F.3d at 1539-1540 (finding an "inventory" of military service "presented in chronological order" that "reflect[ed] no point of view" subject to disclosure).  Thus, Plaintiffs' motion for summary judgment is granted only as to the redactions in the two documents reflected in the <u>Vaughn</u> Index at page 24, Bates 003498-003500, and at page 25, Bates 003501-003503, that relate to the locations of the Commission's meetings and is otherwise denied.

In conclusion, with regard to the documents withheld by the DOE pursuant to Exemption 5, the DOE's motion for summary judgment is granted as to all documents included in Appendix A with the exception of those with the Bates numbers 002876-002881, 002981, and 003232-003233.  The DOE is directed to re-review the material withheld in those three documents in a manner consistent with this Memorandum Opinion and Order, make additional productions to Plaintiffs as appropriate, and update its <u>Vaughn</u> index accordingly within 30 days. With regard to the two documents the parties contest in their briefings but that are not included in Appendix A, at Bates numbers 003498-003500 and 003501-003503, Plaintiffs' motion for summary judgment is granted only as to redactions referring to the locations of the Commission's meetings and is otherwise denied.  The DOE must produce the previously-withheld material reflecting such locations within 30 days of the date of this order.

FOIA Exemption 7

The DOE argues that it has permissibly withheld, in its entirety, pursuant to Exemption 7, an April 13, 2018 report from the FBI "of specific and identified threats, including threats of bombing at schools and school shootings, including quotes from threats received" and "references [to] ongoing FBI investigations," and also including "particular factual details of interest to the FBI."  (<u>Vaughn</u> Index at 32, Bates 003666-003671).[5]  The DOE also represents that it properly withheld, in its entirety, pursuant to Exemption 7, an April 16, 2018,

---

[5]      The same FBI report also appears in the <u>Vaughn</u> Index at Bates 003628-003635, 003647-003653, and 003656-003662.

memorandum from DHS including a "summary of public safety incidents at schools[,]" including "active DHS public safety investigations." (Id. at 34, Bates 003696-003699.)[6]

The DOE first argues that its withholding of the FBI and DHS reports[7] is warranted under Exemption 7(A), which protects from disclosure "records compiled for law enforcement purposes, the disclosure of which 'could reasonably be expected to interfere with enforcement proceedings.'" New York Times Co. v. U.S. Dep't of Justice, 390 F. Supp. 3d 499, 512 (S.D.N.Y. 2019) (quoting 5 U.S.C. section 552(b)(7)(A)). The purpose underlying the exemption is to "prevent harm to the government's case . . . by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have." Conti v. U.S. Dep't of Homeland Sec., No. 12-CV-5827-AT, 2014 WL 1274517, at *22 (S.D.N.Y. Mar. 24, 2014). To meet its burden under Exemption 7(A), the DOE "must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm" in a manner which allows the court "to trace a rational link between the nature of the document and the alleged likely interference." New York Times Co., 390 F. Supp. 3d at 513 (internal quotation marks and citations omitted).

The Court finds that the DOE has met its burden to justify withholding the DHS and FBI reports under Exemption 7(A). First, the DOE has confirmed publicly, through the Smith Declaration and the Vaughn index, that the documents relate to ongoing law enforcement proceedings, namely investigations into school safety incidents. (See Smith Decl. ¶ 19

---

[6]   The same DHS memorandum also appears in the Vaughn Index at Bates 003712-003715.

[7]   The DOE includes the Deliberative Process Privilege as a reason for the withholding of the DHS and FBI reports in the Vaughn index but offers no related arguments in support in its briefings. Thus, the Court will not consider the potential applicability of Exemption 5 to the FBI and DHS reports.

(explaining that DHS records "consist of lists and descriptions of reported public safety incidents at schools, including active DHS public safety investigations" and these records identify "factual details of particular interest to DHS in their investigations of such incidents"); Vaughn index at 32, Bates 003666-003671 (representing that FBI report "references ongoing FBI investigations"); Def. Mem. at 17 (stating that the "records contain information related to pending or prospective proceedings—specifically investigations related to DHS's listed incidents at the schools or the FBI's identified threats"); see also New York Times Co., 390 F. Supp. 3d at 516 (finding DOJ's public confirmation that "all of the withheld records relate to one or more pending or prospective enforcement proceedings" sufficient to meet first requirement under Exemption 7(A)).  Second, the DOE has explained, in the Smith Declaration, the types of harms that are reasonably likely to occur should these records be disclosed.  For example, the Smith Declaration proffers that release of the records "could alert current investigatory targets as to the existence and/or scope of an open investigation, thus impeding the investigation."  (Smith Decl. ¶ 19.)  Plaintiffs' arguments that no harm would result from disclosure because reported incidents or threats "are hardly secret" and "the fact that these incidents occurred is of course known to the suspects themselves, who could infer that their actions may be investigated" are speculative and unpersuasive.  (Pl. Mem. at 20.)  As the DOE explains, "[w]hile it . . . [may] not [be] a secret to the suspect that the suspect made the threat, it is not necessarily known to that suspect that the FBI is investigating the threat" and "informing that suspect that he or she is under investigation . . . certainly could reasonably be expected to cause . . . harm."  (Def. Reply at 13-14.)  The Court agrees.

Moreover, the DOE has certified that it has "conducted a line-by-line review of these records" (Smith Decl. ¶ 20) and an "agency's explanation that records are exempt in their

entirety is sufficient to satisfy its segregability obligations with respect to the documents withheld under Exemption 7(A)." N.Y. Times. Co., 390 F. Supp. 3d at 519.  Thus, the Court finds that the DOE has proffered sufficient evidence to demonstrate that it properly withheld the DHS and FBI records pursuant to Exemption 7(A), and the Court need not reach the parties' arguments as to whether the withholdings were also justified under Exemption 7(E).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, in part, and denied, in part.  The Court finds that the Defendant has proffered sufficient evidence for the Court to find that the records withheld under Exemption 7 were properly withheld in their entirety.  With regard to the documents withheld by the DOE pursuant to Exemption 5, the Court grants Defendant's motion for summary judgment as to all of the documents listed in Plaintiffs' Appendix A (see docket entry no. 30) with the exception of those with the Bates numbers 002876-002881, 002981, and 003232-003233.  The motion is denied without prejudice as to those documents, which the DOE is directed to re-review in a manner consistent with this Memorandum Opinion and Order. The DOE must make additional productions as appropriate, and update its Vaughn index accordingly, within 30 days from the date hereof.  With regard to the two documents the parties contest that are not included in Plaintiffs' Appendix A, at Bates numbers 003498-003500 and 003501-003503, Plaintiffs' motion for summary judgment is granted only as to the redactions referring to the locations of the Commission's meetings contained within those documents, which the DOE must produce within 30 days.  Plaintiffs' motion for summary judgment is otherwise denied.

The parties are directed to confer, and no later than June 30, 2023, file a joint letter identifying any areas of remaining disagreement and stating their positions as to the status of the case, including whether judgment should be entered and this case closed.

This Memorandum Opinion and Order resolves docket entry numbers 26 and 29. This case remains referred to Magistrate Judge Cott for general pretrial management.

SO ORDERED.

Dated: February 28, 2023
New York, New York

/s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge